MICHIGAN ASSOCIATION FOR RETARDED CITIZENS v WAYNE
COUNTY PROBATE JUDGE

OPINION OF THE COURT

1. MENTAL HEALTH—INSTITUTIONS FOR MENTALLY RETARDED—ADMIS-
    SIONS—ADMINISTRATIVE ADMISSION—JUDICIAL ADMISSION—STAT-
    UTES.

    There are two types of admission to institutions for the mentally
    retarded: (1) administrative admission and (2) judicial admis-
    sion (MCLA 330.1509 *et seq.;* 330.1515 *et seq.;* MSA 14.800[509]
    *et seq.,* 14.800[515] *et seq.).*

2. MENTAL HEALTH—INSTITUTIONS FOR MENTALLY RETARDED—ADMIS-
    SION—JUDICIAL ADMISSION—STATUTES.

    Judicial admission to institutions for the mentally retarded is
    limited to persons who can reasonably be expected to physically
    injure themselves or others and who have overtly acted in a
    manner which supports this expectation (MCLA 330.1515 *et
    seq.;* MSA 14.800[515] *et seq.).*

3. MENTAL HEALTH—INSTITUTIONS FOR MENTALLY RETARDED—ADMIS-
    SIONS—ADMINISTRATIVE ADMISSION—GUARDIANS—PROBATE
    COURT—STATUTES.

    Administrative admission for adults to institutions for the men-
    tally retarded may be executed by the individual himself if he
    is competent to do so, or by the individual's guardian, providing
    the guardian has been specifically empowered by the probate
    court (MCLA 330.1509[2], 330.1622[2]; MSA 14.800[509][2],
    14.800[622][2]).

4. MENTAL HEALTH—MENTAL HEALTH CODE—INSTITUTIONS FOR MEN-
    TALLY RETARDED—ADMISSIONS—REDETERMINATIONS—STATUTES.

    The recently enacted Mental Health Code provides that within

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 41 Am Jur 2d, Incompetent Persons § 33 *et seq.*
[2] 41 Am Jur 2d, Incompetent Persons § 34.
[5, 6] 20 Am Jur 2d, Courts § 111 *et seq.*
[5, 7] 39 Am Jur 2d, Guardian and Ward § 47.
[8] 61 Am Jur 2d, Pleading § 229.
[9] 73 Am Jur 2d, Statutes § 56 *et seq.*

two years of its enactment all admissions of persons to institutions for the mentally retarded which took place under portions of the act which were repealed and which are inconsistent with the new act should be redetermined and made consistent with the new act (MCLA 330.2104; MSA 14.800[1104]).

5. MENTAL HEALTH—SUPERINTENDING CONTROL—JUDGES—PROBATE JUDGES—GUARDIANSHIP HEARINGS—MENTAL HEALTH CODE—ABUSE OF DISCRETION.

The refusal of a circuit court judge, in an action for an order of superintending control to require a probate court judge to rehear guardianship petitions which were allegedly heard without conformity with the new Mental Health Code, to decide if the guardianship hearings complied with the requirements of the new Mental Health Code was an abuse of the trial judge's discretion.

6. ACTION—SUPERINTENDING CONTROL—ORIGINAL CIVIL ACTION—PERFORMANCE OF CLEAR LEGAL DUTY.

The process of seeking an order of superintending control is not an appeal; it is a new lawsuit, with different parties and different purposes; it is an original civil action designed to require a defendant to perform a clear legal duty.

7. MENTAL HEALTH—MENTAL HEALTH CODE—MENTALLY RETARDED—PROBATE JUDGES—HEARINGS—GUARDIANS—SUPERINTENDING CONTROL—STATUTES.

The Mental Health Code provides safeguards to protect the substantive rights of the mentally retarded and imposes certain duties on a probate judge in a hearing convened for the appointment of a guardian; an order of superintending control requiring a probate judge to rehear guardianship petitions which were allegedly heard without conformity with the new Mental Health Code may issue where it is proven in circuit court that the probate judge acted contrary to the code (MCLA 330.1618[1], 330.1628[2]; MSA 14.800[618][1], 14.800[628]).

8. JUDGMENT—SUMMARY JUDGMENT—WELL-PLEADED FACTS—FAILURE TO STATE A CLAIM—COURT RULES.

A circuit court is required to accept as true all well-pleaded factual allegations in a plaintiff's complaint in testing a defendant's motion for summary judgment based on the plaintiff's failure to state a claim upon which relief could be granted (GCR 1963, 117.2[1]).

CONCURRENCE BY D. C. RILEY, P. J.

9. STATUTES—COURTS—LEGISLATION—IMPACT ON JUDICIARY.

*Reform legislation which imposes an added burden on a segment of the state's judiciary should not be enacted by the Legislature without giving consideration to the legislation's impact on the courts.*

Appeal from Wayne, James N. Canham, J. Submitted June 22, 1977, at Detroit. (Docket No. 77-535.) Decided November 9, 1977.

Complaint by the Michigan Association for Retarded Citizens, Robert J. Thayer, by his guardian, Mary Thayer, and Walter Perkowski, by his guardian, Mary Ann Lukasik, against Wayne County Probate Judge Ernest C. Boehm, for an order of superintending control requiring the defendant to rehear all guardianship petitions for persons affected by hearings held in violation of the Mental Health Code and to hold all future hearings in compliance with the Mental Health Code. Superintending control denied. Plaintiffs appeal. Reversed and remanded.

*Jon R. Garrett, David T. Verseput* and *William J. Campbell,* for plaintiffs.

*Aloysius J. Suchy,* Corporation Counsel, and *John Jay McCann,* Assistant Corporation Counsel, for defendant.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

P. R. MAHINSKE, J. Plaintiffs Thayer and Perkowski were among over 100 mentally retarded individuals for whom guardianship hearings were

* Circuit judge, sitting on the Court of Appeals by assignment.

held by defendant on October 1, 1976, at the Oakdale Center for Developmental Disabilities. These hearings began at approximately 10:30 a.m. and were completed at 11:45 a.m. the same day. Plaintiffs alleged that the manner in which the hearings were held, at this institution and at other state institutions at other times by defendant, violated the new Mental Health Code, MCLA 330.1001 *et seq.;* MSA 14.800(1) *et seq.* Plaintiffs sought an order of superintending control pursuant to GCR 1963, 711, requiring defendant to rehear all guardianship petitions for persons affected, and to hold all future hearings in compliance with the Mental Health Code. The Wayne County Circuit Court declined to exercise superintending control and granted defendant's motion for summary judgment. We reverse and remand for further proceedings.

Plaintiffs Thayer and Perkowski have been residents of Oakdale Center for over 20 years. They and other mentally retarded persons were admitted to state institutions under the former mental health law, which allowed commitment by the court upon a sufficient showing of mental disease. Under the new mental health law, however, there are two types of admission to institutions for the mentally retarded: (1) administrative admission, MCLA 330.1509 *et seq.;* MSA 14.800(509) *et seq.;* and (2) judicial admission, MCLA 330.1515 *et seq.;* MSA 14.800(515) *et seq.* Judicial admission is limited to persons who can reasonably be expected to physically injure themselves or others and who have overtly acted in a manner which supports this expectation. Administrative admission for adults may be executed by the individual himself if he is competent to do so, or by the individual's guardian, MCLA 330.1509(2); MSA 14.800(509)(2),

providing the guardian has been specifically empowered to do so by the probate court, MCLA 330.1622(2); MSA 14.800(622)(2). These provisions radically alter the former statutes.

To the extent that the procedures followed in the original admissions of plaintiffs and other mentally retarded individuals did not comport with the new Mental Health Code, redeterminations were required. MCLA 330.2104; MSA 14.800(1104) provides:

"As soon as practicable after this act shall take effect but no later than 2 years after this act shall take effect, all actions then having legal effect under any provision of the acts and parts of acts repealed by this act and which are inconsistent with any provision of this act shall be redetermined and made consistent with the provisions of this act."

It is against this background that the guardianship hearings for plaintiffs Thayer and Perkowski took place. The entire transcript of plaintiff Perkowski's hearing was as follows:

"MR. RADER: In the matter of Walter Perkowski.

"THE WITNESS: Walter Perkowski is currently a resident of Oakdale Center. He needs constant supervision on a daily basis and he cannot take care of basic needs. I would recommend that a guardian be appointed.

"THE COURT: Has the ward been served, Lois?

"THE CLERK: Yes, he has.

"THE COURT: I will appoint Mary Ann Lukasik as the plenary guardian and authorize administrative admission. Are there any members of the family that wish to be heard here? There appears to be none. Okay, call the next case."

The circuit court was asked to decide if the

above hearing complied with the requirements of the new mental health law. We find that the circuit judge abused his discretion in refusing to answer this question. The process of seeking an order of superintending control is not an appeal. It is a new lawsuit, with different parties and different purposes. *People v Flint Municipal Judge,* 383 Mich 429, 432; 175 NW2d 750 (1970). It is an original civil action designed to require the defendant to perform a clear legal duty—in the instant case, to conduct guardianship hearings in accord with the state Mental Health Code.

The Mental Health Code provides safeguards designed to protect the substantive rights of the mentally retarded. Section 618, MCLA 330.1618(1); MSA 14.800(618)(1) imposes certain duties on the probate judge:

"The court, at a hearing convened under this chapter for the appointment of a guardian, shall:

(a) Inquire into the nature and extent of the general intellectual functioning of the individual asserted to need a guardian.

(b) Determine the extent of the impairment in his adaptive behavior.

(c) Ascertain his capacity to care for himself and his estate."

In addition, § 628 of the act, MCLA 330.1628(2); MSA 14.800(628) provides:

"Prior to the appointment, the court shall make a reasonable effort to question the mentally retarded person concerning his preference regarding the person to be appointed guardian, and any preference indicated shall be given due consideration by the court."

Plaintiff Perkowski's hearing did not comply with these statutory mandates.

In testing defendant's motion for summary judgment the circuit court was required to accept as true all well-pleaded factual allegations in plaintiffs' complaint. GCR 1963, 117.2(1); *Borman's, Inc v Lake State Development Co,* 60 Mich App 175, 179; 230 NW2d 363 (1975). Here plaintiffs alleged that defendant acted contrary to the Mental Health Code as to all members of a specified class. They also asserted the absence of any other plain, speedy and adequate remedy available to the class as a whole. These allegations, if proven, taken together with those concerning violations by defendant of specific statutory provisions, did state a claim upon which an order of superintending control could issue. See *Cahill v Fifteenth District Judge,* 393 Mich 137; 224 NW2d 24 (1974). Despite plaintiffs' access to the avenue of individual appeals, such avenue would not support relief for the complaining class as a whole. Furthermore, it would not allow the circuit court to address and resolve the objections regarding the generalized practices of the probate judge.

For the above reasons we find that the circuit court's dismissal of plaintiffs' complaint was erroneous. On remand the circuit court shall hear and determine the question of whether or not the hearings held by defendant comported with the mandates of MCLA 330.1618(1) and MCLA 330.1628(2), and with other Mental Health Code provisions of which plaintiffs have alleged violations. The court shall comply with GCR 1963, 517.1. If the court finds the hearings were not held in accordance with statutory requirements, the court shall order rehearings of the guardianship petitions for those individuals affected, and shall order that future hearings held by defendant shall

adhere to the procedures outlined in the Mental Health Code.

Reversed and remanded for further proceedings consistent with this opinion.

Bashara, J., concurred.

D. C. Riley, P. J. *(concurring)*. While I can do little to embellish Judge Mahinske's fine opinion in the present case, I write separately to offer the following observation.

For apparently laudable motives, the Legislature has decided to enact reforms which, *inter alia,* accord expanded hearing rights to mentally retarded persons in guardianship proceedings. However praiseworthy this enactment may be, it remains an empty gesture so long as the Legislature fails to enhance accordingly the number of probate judges available for guardianship hearings.

To impose additional, comprehensive duties on judges already overburdened by ever-expanding dockets without a commensurate increase in their membership is to enact a palliative measure that will assuredly breed in the citizenry an unhealthy cynicism toward the law and its processes.

Thus, I echo the point made by Chief Justice Kavanagh when he expressed "the need for judicial impact statements" which would assess the effect pending legislation might have on the courts. *The State of the Judiciary,* 56 Mich BJ 301, 303 (1977).

I do not suggest, however, that augmentation of the judiciary is the only answer. "Administrative handling", *Id.* at 302, may be entirely proper in certain circumstances. But where the Legislature has decreed that probate judges shall be charged with fixed responsibilities, as in the present case, it is no answer to add these duties without apparent consideration of their "impact on the courts".