CITY OF DETROIT v RECORDER'S COURT JUDGE

Docket Nos. 49110, 49905. Submitted June 17, 1980, at Detroit.—
Decided March 3, 1981. Leave to appeal applied for.

The City of Detroit filed a complaint for superintending control in
Wayne Circuit Court following the rendering of an opinion by
William C. Hague, judge of Detroit Recorder's Court, Traffic
and Ordinance Division, that § 39-1-52 of the city's municipal
code was unconstitutional and his refusal to enforce its provi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law § 212 *et seq.*
    56 Am Jur 2d, Municipal Corporations §§ 381-385.
    73 Am Jur 2d, Statutes §§ 37, 42, 103, 123.
[2-4, 6, 7] 20 Am Jur 2d, Courts §§ 111, 115.
[3] 20 Am Jur 2d, Courts § 112.
[4-6] 20 Am Jur 2d, Courts § 117.
[5] 4 Am Jur 2d, Appeal and Error §§ 172, 309.
    20 Am Jur 2d, Courts § 114.
[8] 20 Am Jur 2d, Courts §§ 183, 201.
    Prospective or retrospective operation of overruling decision. 10
    ALR3d 1371.
[9] 63 Am Jur 2d, Prostitution § 1.
[10] 20 Am Jur 2d, Courts § 98.
[11] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions, §§ 374, 375.
[12, 18] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 126, 128, 138.
[13-16] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 375.
[15] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 487.
    63 Am Jur 2d, Prostitution § 2.
    Validity, construction, and effect of statute or ordinance proscribing
    solicitation for purposes of prostitution, lewdness, or assignation
    —modern cases. 77 ALR3d 519.
[17] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 415.
[18] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 375, 376.
    73 Am Jur 2d, Statutes § 145.
[19] 73 Am Jur 2d, Statutes § 277.

sions. Richard C. Dunn, J., issued an opinion upholding the ordinance and an order of superintending control. Judge Hague filed a claim of appeal of Judge Dunn's order with the Court of Appeals and continued to dismiss cases brought before him under the ordinance. The city thereupon petitioned the circuit court for an order directing Judge Hague to show cause why he should not be held in contempt and why he should not be prohibited from hearing cases under the ordinance. Following a hearing, Horace W. Gilmore, J., found Judge Hague in contempt and enjoined him from hearing any cases under the ordinance. Judge Hague then filed motions in the Court of Appeals for immediate consideration of his appeal of Judge Gilmore's decision and for a stay of proceedings in the circuit court. The Court of Appeals granted Judge Hague's motion for immediate consideration, but granted a stay only as to the sentence provision of Judge Gilmore's order. Both the city and Judge Hague then sought leave to appeal to the Supreme Court prior to a decision by the Court of Appeals, which application was denied. 408 Mich 900 (1980). The appeals were consolidated by order of the Court of Appeals. *Held:*

1. The circuit court properly issued the order of superintending control. Judge Hague's actions constituted a general practice or policy of the lower court, the proper review of which is via superintending control. An appeal of an individual dismissal under the ordinance would have provided the city with an inadequate remedy.

2. The Traffic and Ordinance Division of Detroit Recorder's Court has original and exclusive jurisdiction to hear cases brought under the ordinance.

3. The ordinance is not preempted by or in conflict with state statutes either due to the state's regulatory schemes or differences between state and local penalties.

4. Judge Gilmore's adjudication of contempt against Judge Hague is vacated upon the city's request.

Affirmed in part, vacated in part.

1. S<small>TATUTES</small> — O<small>RDINANCES</small> — C<small>ONSTITUTIONAL</small> L<small>AW</small>.

Generally, enactments of the Legislature are clothed with a presumption of constitutionality as are municipal ordinances.

2. S<small>UPERINTENDING</small> C<small>ONTROL</small> — C<small>HALLENGES</small> <small>TO</small> I<small>NFERIOR</small> C<small>OURT</small> P<small>RACTICES</small>.

Superintending control is the proper vehicle by which to challenge a generalized practice of an inferior court.

3. SUPERINTENDING CONTROL — CIRCUIT COURTS — CONSTITUTIONAL LAW — STATUTES — COURT RULES.

    A circuit court has a constitutionally-based power to exercise supervisory and general control over inferior courts within its jurisdiction (Const 1963, art 6, § 13, MCL 600.615; MSA 27A.615, GCR 1963, 711).

4. SUPERINTENDING CONTROL — REMEDIES — COURT RULES.

    Superintending control is not available where another adequate remedy, such as appeal, exists (GCR 1963, 703.1, 711, 806.1).

5. APPEAL — RECORDER'S COURT OF DETROIT — STATUTES — COURT RULES.

    Convictions of violations of municipal ordinances in the Traffic and Ordinance Division of Detroit Recorder's Court may be appealed as of right to the circuit court and further review may be had only upon application for leave to appeal granted by the Court of Appeals; no automatic right of appeal of dismissals of such violations accrues to a municipal attorney or prosecutor, but obtains only by leave granted (MCL 600.308[1]; MSA 27A.308[1], GCR 1963, 703.1).

6. SUPERINTENDING CONTROL — REMEDIES — COURT POLICIES.

    Superintending control is a proper remedy where a plaintiff seeks review of the general policies of an inferior court although appeal is available, especially where an appeal would provide an inadequate remedy.

7. SUPERINTENDING CONTROL — COURT POLICIES.

    Superintending control may be sought where the general policies of a court involve the practices of an individual judge or judges, but less than the entire court.

8. APPEAL — COURT OF APPEALS — STATUTES.

    A decision of any division of the Court of Appeals is controlling statewide until a contrary decision is reached by another division on an identical question or until the decision is reversed by the Supreme Court (MCL 600.314[1]; MSA 27A.314[1]).

9. CRIMINAL LAW — PROSTITUTION — STATUTES.

    Prostitution is a non-traffic criminal misdemeanor (MCL 750.449, 750.450; MSA 28.704, 28.705).

10. COURTS — CRIMINAL LAW — JURISDICTION — RECORDER'S COURT OF DETROIT — STATUTES.

    The judges of the Traffic and Ordinance Division of Detroit

Recorder's Court have original and exclusive jurisdiction over all prosecutions and proceedings for crimes, felonies, misdemeanors, and offenses committed within the corporate limits of the City of Detroit arising under state laws relating to traffic and public highways and for violations of all ordinances, rules, or regulations of the city (MCL 725.18[1]; MSA 27.3958[1]).

11. STATUTES — PREEMPTION — MUNICIPAL ORDINANCES.

Municipal ordinances are void where they actually conflict with state law or where the entire area has been preempted by the state.

12. MUNICIPAL CORPORATIONS — HOME RULE CITIES — LEGISLATIVE POWER — POLICE POWER — STATUTES.

A home rule city has broad power to legislate, and the police power of a home rule city is of the same general scope and nature as that of the state (MCL 117.1 *et seq.;* MSA 5.2071 *et seq.).*

13. STATUTES — PREEMPTION — MUNICIPAL ORDINANCES.

Preemption of municipal ordinances occurs where state law expressly provides that the state's authority to regulate a specific area is exclusive, the Legislature, as evidenced by the legislative history of the regulation, intended the state's authority to be exclusive, the pervasiveness of the state's regulatory scheme of the area supports preemption, or the nature of the regulated subject matter demands preemption to achieve the uniformity necessary to serve the state's purpose or interest.

14. STATUTES — PREEMPTION — MUNICIPAL ORDINANCES.

Municipal ordinances generally should be held not to be preempted by state law where the nature of the regulated subject matter requires adaptation to meet local conditions.

15. CRIMINAL LAW — PROSTITUTION — PREEMPTION.

Municipal ordinances against prostitution are not preempted by state regulations.

16. STATUTES — PREEMPTION — MUNICIPAL ORDINANCES.

A state regulatory scheme generally is insufficient of itself to imply preemption of municipal ordinances.

17. CRIMINAL LAW — MUNICIPAL ORDINANCES — CRIMINAL ACTS.

Violation of a municipal ordinance may be considered a criminal act.

18. MUNICIPAL CORPORATIONS — HOME RULE ACT — SENTENCES —
    STATUTES.

   The Legislature, in enacting the home rule act, did not intend to
   remove from municipalities the power to fix mandatory mini-
   mum sentences, and the mere fact that an ordinance authorizes
   the imposition of a greater penalty than does a state statute
   does not necessarily invalidate the ordinance (MCL 117.4i[10];
   MSA 5.2082[10]).

19. MUNICIPAL CORPORATIONS — HOME RULE ACT — JUDICIAL CON-
    STRUCTION — STATUTES.

   The home rule act should be construed liberally (MCL 117.4i;
   MSA 5.2082).

*George W. Crockett, Jr.,* Acting Corporation
Counsel, and *Alfred Sawaya* and *Robert D. Hor-
vath,* Assistant Corporation Counsels, for plaintiff.

*Kenneth N. Hylton, P.C.* (by *Kenneth N. Hylton*
and *Joseph Earl Jackson),* for defendant.

Before: N. J. KAUFMAN, P.J., and CYNAR and
J. E. TOWNSEND,* JJ.

N. J. KAUFMAN, P.J. The subject matter of this
appeal is Detroit Recorder's Court Traffic & Ordi-
nance Judge William C. Hague's refusal to enforce
Detroit Municipal Code § 39-1-52 which concerns
prostitution.[1] On January 30, 1980, Wayne County

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Chapter 39, Article I, of the Municipal Code of the City of Detroit,
§ 39-1-52, reads in pertinent part as follows:

"It shall be unlawful for any person to accost, solicit or invite
another in any public place or in or from any building or vehicle by
word, gesture or any other means to commit or afford an opportunity
to commit fornication or prostitution or to do any other lewd immoral
act. It shall be unlawful for any person to engage or offer to engage
the service of another person for an act of prostitution, lewdness or
assignation, by the payment in money or other forms of consideration.
It shall be unlawful for any person to loiter in a house of ill fame or
prostitution, or place where prostitution or lewdness is practiced,
encouraged or allowed.

"Upon conviction for violation of this section, if the violation
occurred in a public place outside of a building, the defendant shall be

Circuit Court Judge Horace Gilmore adjudged Judge Hague to be in contempt for refusing to enforce the ordinance and enjoined him from hearing any cases commenced under § 39-1-52 of the Detroit Municipal Code.

The instant appeal comes before this Court on stipulated facts, some of which must now be recited. On September 4, 1978, William C. Hague, judge of Recorder's Court, Traffic & Ordinance Division, rendered a written opinion declaring the City of Detroit's Municipal Code § 39-1-52 unconstitutional. Subsequently, the City of Detroit filed a complaint for superintending control before Richard C. Dunn, Chief Judge of Wayne County Circuit Court.

On April 23, 1979, Judge Dunn issued a written opinion upholding the validity of the ordinance in question, and, on the same date, Judge Dunn signed an order of superintending control. After Judge Hague's motions for reconsideration and stay of further proceedings were denied, Judge Hague filed a claim of appeal with this Court. It is uncontroverted that the Honorable William C. Hague dismissed 418 cases brought under the Detroit Municipal Code § 39-1-52 during late 1978 and early 1979. These cases were never tried, and, therefore, no defendant has ever appealed the issues raised by Judge Hague.

---

sentenced to a term of imprisonment for not less than twenty (20) days and shall be fined not less than two hundred and fifty ($250.00) dollars.

"Upon conviction for violation of this section, occurring other than in a public place outside of a building, the defendant shall be sentenced to a term of imprisonment not to exceed ninety (90) days and/or a fine not to exceed five hundred ($500.00) dollars in the discretion of the court.

"Section 2. This ordinance is declared necessary for the preservation of the peace, health, safety and welfare of the people of the City of Detroit and is hereby given immediate effect.

* * *

"Effective December 26, 1977."

Although there was an adjudication of contempt made on January 30, 1980, the City of Detroit has requested that this Court address itself instead to the issue of the appropriateness of the order of superintending control as well as other pertinent issues raised by this appeal.

It is this Court's belief that many of the constitutional questions raised by Judge Hague in his opinion and rejected by Judge Dunn in his ruling may indeed be meritorious and that they may someday be addressed in an appropriate appeal. Until such day, however, we note that "[a]s a general rule, the Legislature's enactments are clothed with a presumption of constitutionality". See *American Amusement Co, Inc v Dep't of Treasury,* 91 Mich App 573, 576; 283 NW2d 803 (1979), *lv den* 407 Mich 942 (1979). In regard to this presumption, "the rule applicable to ordinances of a city government is the same as that applied to statutes passed by the legislature". *Cady v Detroit,* 289 Mich 499, 505; 286 NW 805 (1939). Because of this presumption and because we feel that most of the constitutional questions raised by Judge Hague are not properly before this Court (either on the basis of standing or ripeness), we will not consider them in this opinion. Since both the city and Judge Hague have so requested, however, we shall try to address ourselves to all other meritorious issues raised by this appeal.

It is our belief that the issue of the appropriateness of the order of superintending control has been fully resolved by our opinion in *Detroit v Recorder's Court Judge,* 85 Mich App 284; 271 NW2d 202 (1978), *lv den* 404 Mich 808 (1978). However, because of the importance of this question, we will attempt to further delineate the position of this Court.

In *Detroit v Recorder's Court Judge, supra,* 288-289, in which Judge Hague's practice of dismissing nontraffic ordinance violation complaints issued in ticket form was appealed, this Court held that:

"Superintending control is the proper vehicle by which to challenge a generalized practice of an inferior court, in this case the Recorder's Court, Traffic & Ordinance Division. *Cahill v 15th Dist Judge,* 393 Mich 137; 224 NW2d 24 (1974), *Michigan Ass'n for Retarded Citizens v Wayne County Probate Judge,* 79 Mich App 487, 493; 261 NW2d 60 (1977). In the case at bar plaintiff had no other adequate remedy by appeal. GCR 1963, 711.2. Plaintiff would have had to challenge each dismissal separately, a remedy which would have been too time-consuming and burdensome to be called 'adequate'. Because appellant's method of conducting his general court proceedings in all cases which present a common, legal and factual situation is at issue, superintending control is the proper avenue for relief."

Judge Hague argues that review of his actions via superintending control was improper because the circuit court lacked jurisdiction, because the city had an appeal available to it, and because a generalized practice of the court was not in question. We will address these three contentions *seriatim.*

The question of jurisdiction and the city's right to appeal are inextricably bound. Let us first note that a circuit court does have a constitutionally-based power to exercise supervisory and general control over inferior courts within its jurisdiction. Const 1963, art 6, § 13 provides:

"The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law; power to issue, hear and determine prerogative and remedial writs; supervisory and

general control over inferior courts and tribunals within their respective jurisdictions in accordance with the rules of the supreme court; and jurisdiction of other cases and matters as provided by rules of the supreme court."

MCL 600.615; MSA 27A.615 codifies this Constitutional authority as follows:

"The circuit courts have a general superintending control over all inferior courts and tribunals, subject to the rules of the Supreme Court."

The Constitutional and statutory power of a circuit court to exercise superintending control is delineated by GCR 1963, 711, which provides in pertinent part:

"Rule 711. Superintending Control.

".1 Scope. A superintending control order enforces the superintending control power of a court over lower courts or tribunals.

".2 Policy Concerning Use. If another adequate remedy is available to the party seeking the order, a complaint for superintending control may not be filed. See GCR 1963, 701.1(b); 711.4(b); 862.5(a).

".3 Writs Superseded. A superintending control order replaces the writs of certiorari and prohibition and the writ of mandamus when directed to a lower court or tribunal.

".4 Jurisdiction.

"(a) The Supreme Court, the Court of Appeals, and the circuit court have jurisdiction to issue superintending control orders to lower courts and tribunals.

"(b) When an appeal in the Supreme Court, the Court of Appeals, or the circuit court is available, that method of review must be used. If superintending control is sought and an appeal is available, the complaint for superintending control must be dismissed."

As the above-cited authority clearly indicates, superintending control requires the existence of a superior-inferior court relationship and is not available if another adequate remedy exists.

In our view, there is no question that a superior-inferior court relationship exists. Recorder's Court, Traffic & Ordinance Division, is an inferior court to Wayne County Circuit Court. See *Swift v Wayne County Circuit Judges,* 64 Mich 479; 31 NW 434 (1887), *Detroit v Wayne Circuit Judge,* 233 Mich 356; 206 NW 582 (1925), *Gray v Recorder's Court Judges,* 51 Mich App 386; 215 NW2d 198 (1974). It therefore appears that the crucial question in determining the appropriateness of the order of superintending control in the instant matter is whether or not the City of Detroit had another adequate remedy for review of Judge Hague's actions available to it.

In general, appellate review of decisions rendered by the Recorder's Court, Traffic & Ordinance Division, is governed by MCL 600.308(1); MSA 27A.308(1), which provides in pertinent part:

"Appeals from final judgments from all other courts and from convictions for ordinance violations in the traffic and ordinance division of recorder's court shall be taken to the circuit courts, upon which further review may be had only upon application for leave to appeal granted by the court of appeals."

GCR 1963, 806.1, which governs appeals as of right, contains identical language.

The above-cited statute confers a right of appeal from convictions in municipal ordinance violation cases. By negative implication, there is no automatic right of appeal granted to a municipal attorney or prosecutor in such instances. This, however, does not mean that there is no avenue open to the

City of Detroit, should it seek to appeal. GCR 1963, 703.1, added July 25, 1977, gives a municipal prosecutor access to request leave to appeal from a trial or municipal court if no appeal as of right exists. Thus, as to any individual case dismissed by a judge of Recorder's Court, Traffic & Ordinance Division, the city could have sought leave to appeal. It is Judge Hague's assertion that this is the method the city should have used, and that seeking an order of superintending control was tantamount to obtaining an appeal as of right, which the city did not otherwise possess.

We agree that it is clear from a consideration of GCR 1963, 703.1, 711.4(b), and 806.1 that the Supreme Court has mandated that the writ of superintending control is not to be used as a simple substitute for appeal. GCR 1963, 711.4(b), as amended in July of 1977, makes this abundantly clear.

We do not dispute the fact that the City of Detroit had access to appeal by seeking leave to appeal in any particular ordinance case, and we further note that this access existed at the time of our decision in *Detroit v Recorder's Court Judge, supra,* although Judge Hague appears to consider this a new avenue available to the city. Nevertheless, our response to Judge Hague's argument remains the same as it did in the above-cited case: under the facts and circumstances presented in the instant matter, the order of superintending control was properly issued.

By seeking leave to appeal, pursuant to GCR 1963, 703.1, the city could, indeed, have had review of the dismissal of any one isolated case, and such review would have been determinative as to that case. Here, however, over 400 dismissals had occurred. Since the adjudication of any one case

would not have affected the disposition of any of the others, we believe that superintending control provided the only adequate remedy. GCR 1963, 711.2, *Detroit v Recorder's Court Judge, supra.* See also *People v Gebarowski,* 47 Mich App 379; 209 NW2d 543 (1973), *lv den* 390 Mich 785 (1973).

In *Wayne County Prosecutor v Recorder's Court Judges,* 81 Mich App 317; 265 NW2d 134 (1978), *lv den* 403 Mich 860 (1978), the prosecutor challenged the bond and bail practices of two judges in ten cases by filing a complaint for superintending control. The prosecutor alleged that those cases were representative of 90 cases. The use of superintending control was challenged. The Court of Appeals addressed the issue as follows:

"Defendant Goldfarb argues that superintending control is unavailable to plaintiff at this time, as an adequate remedy (appeal in each case) is available. See GCR 1963, 711.2. This issue is controlled by *Cahill v 15th Dist Judge,* 70 Mich App 1; 245 NW2d 381 (1976), in which, on similar facts, the Supreme Court held that superintending control was the proper remedy for challenging the generalized practices of a court." *Id.,* 319, fn 1.

When the City of Detroit filed its complaint for superintending control in the instant case, it alleged wrongful dismissal, over a four-week period, of over 400 ordinance cases. Judge Hague has admitted to dismissing City of Detroit ordinance cases commenced under Detroit City Code § 39-1-52 which have come before him. The magnitude of the city's task in seeking leave to appeal in hundreds of cases over such a period of time is self-evident.

In the instant matter, relief, which can be obtained only by seeking leave to appeal in over 400

cases, is clearly inadequate. The city is desirous of compelling Judge Hague to enforce an ordinance which he has refused to enforce in hundreds of instances. Detroit Recorder's Court, Traffic & Ordinance Division, handles an extremely high volume of cases.[2] Individual appeals of each dismissal would certainly be too burdensome to be deemed adequate. It is our belief that such a procedure would also be unfair to Judge Hague, to the circuit court which heard this case, and, above all, to the people of the City of Detroit. If superintending control is not appropriate in this case, it is difficult to imagine an instance in which this remedy could be utilized.

Judge Hague does acknowledge that there is a judicially-created exception to the rule that one with an appeal must seek review via this avenue rather than by superintending control. In *Cahill, supra,* the Michigan Supreme Court held that superintending control was a proper remedy even though the individual litigant had an available appeal where plaintiff sought review of the general policies and practices of the court. See also *Oakland County Prosecutor v Forty-Sixth Dist Judge,* 72 Mich App 564, 567; 250 NW2d 127 (1976), *Michigan Ass'n for Retarded Citizens, supra, Wayne County Prosecutor v Recorder's Court Judges, supra.*

The city argues that the instant case clearly falls within the exception enunciated in *Cahill.* It is the city's contention that superintending control is proper in this case because a general practice of the court is under consideration, to wit: Judge Hague's practice of dismissing all accosting and

[2] This Court takes judicial notice of the fact that Detroit Recorder's Court, Traffic & Ordinance Division, is administered by three judges and nine referees, who handle approximately 1,000,000 cases in a fiscal year.

soliciting cases brought before him pursuant to Municipal Code § 39-1-52.

Judge Hague's response to this contention is that the *Cahill* exception is not applicable to the instant case because a "practice" is not being challenged and, furthermore, that the challenge does not involve the entire court but rather concerns only one judge of the court. Appellant contends that his decision that the ordinance in question is unconstitutional cannot be characterized as a practice. He also contends that because his procedures are not adhered to by the other two judges in the Traffic & Ordinance Division, even if his actions are deemed to be a "practice", they are not a practice or procedure of the entire court.

Concerning the first part of this argument, it is Judge Hague's allegation that his opinion of September 4, 1978, constituted one decision which was ongoing, so that no practice existed. Let us here state that we find this characterization analytically disingenuous when, in the next breath, Judge Hague claims that the city should have appealed one of his decisions. We grant that Judge Hague issued only one opinion expressing his view that the ordinance was unconstitutional. Nevertheless, he put the belief expressed in this opinion into practice by routinely dismissing all complaints brought before him under the ordinance. Whatever the theoretical basis for his practice of dismissing such complaints, a practice it surely was.

As to the second part of Judge Hague's argument, he contends that the *Cahill* exception only applies where the practice is one of the court, by which Judge Hague means all of the judges of a particular bench. Judge Hague argues that there is no exception to the rules for superintending control where only a single judge is involved. This

view must also be rejected. While the *Cahill* opinion may be ambiguous as to what is meant by a practice of the court, it is undeniable that the complaint for superintending control in that case sought review only of the practices of one judge of the district court. Since *Cahill,* this Court has decided that the practice of an individual judge or judges (but less than the entire court) is a practice which may properly be reviewed via superintending control. See *Detroit v Recorder's Court Judge, supra, Wayne County Prosecutor v Recorder's Court Judges, supra.*

Additionally, appellant argues that only where there exists a class of persons situated in the same position as the party seeking superintending control is the *Cahill* exception applicable. Judge Hague contends that because in the instant case only the city is aggrieved, superintending control is not permissible. It is our opinion that the city does indeed represent its people. It is also clear that in the instant case, no defendant whose case had been dismissed by Judge Hague would be likely to bring an appeal to this Court. We, therefore, hold that this case falls clearly within the parameters enunciated in *Cahill, supra.*

As an aside, we note that Judge Hague argues that no decision of this Court should be given weight on the theory that Court of Appeals decisions are not precedent establishing. We are not merely being self-serving when we state that we do not agree. While decisions of this Court are not precedent setting in the sense that subsequent panels of this Court are bound to follow earlier opinions, a "decision of any division of this Court is controlling statewide until a contrary decision is reached by another division on the identical question or until such decision is reversed by the

Supreme Court". *Hackett v Ferndale City Clerk,* 1 Mich App 6, 11; 133 NW2d 221 (1965). MCL 600.314; MSA 27A.314 provides: "Sec. 314. (1) The decisions on appeal of the court of appeals are final, except as reviewed by the supreme court as provided by supreme court rule."

Whether precedential or not, we believe that this Court's decision in *Detroit v Recorder's Court Judge, supra,* is persuasive and we choose to follow its reasoning. In the instant case, as in that case, we find that the City of Detroit was faced with an extraordinary situation—mass dismissals of city ordinance cases before trial. This amounted to a general practice or policy of the lower court. Finding that an appeal of an individual dismissal would not have provided an adequate remedy, we hold that in the instant matter the circuit court's issuance of the order of superintending control was clearly appropriate.

We now direct our attention to those substantive matters raised by appellant which we deem both meritorious and properly before this Court.

Judge Hague first asserts that the Traffic & Ordinance Division of Recorder's Court does not have jurisdiction over city ordinance cases. His argument is as follows. Traffic court has jurisdiction over misdemeanors and felonies as outlined by the state Legislature. Ordinances enacted by a municipal legislature are not crimes. A municipality legally may not enact an ordinance covering conduct which is a misdemeanor under state law and thereby create jurisdiction in the traffic court. Appellant contends that his dismissal of the accosting and soliciting charges brought under the city ordinance was mandatory because his court has no jurisdiction over nontraffic criminal laws. We note that prostitution has specifically been

made a nontraffic criminal misdemeanor by the state Legislature. MCL 750.449, 750.450; MSA 28.704, 28.705.

We also note, however, that MCL 725.18(1); MSA 27.3958(1) clearly provides:

"(1) The judges of the traffic and ordinance division shall have original and exclusive jurisdiction of all prosecutions and proceedings in behalf of the people of this state for all crimes, felonies, misdemeanors, and offenses committed within the corporate limits of the city of Detroit and arising under state laws relating to traffic on the public highways of this state, including the crime of negligent homicide and the crimes of manslaughter and involuntary manslaughter committed in the operation of a motor vehicle. *The judges of the traffic and ordinance division shall also have original and exclusive jurisdiction of all complaints and proceedings in behalf of the people of the city of Detroit for violations of all ordinances, rules, or regulations of the city.* The judges of the traffic and ordinance division may issue all lawful writs and process and do all lawful acts which may be necessary and proper to carry into complete effect the powers and jurisdiction given by this act." (Emphasis added.)

The last part of this statutory provision specifically bestows "original and exclusive jurisdiction" over all city ordinance violations in the traffic court. Assuming *arguendo* that Judge Hague's position in regard to the Detroit Common Council's authority to enact the ordinance in dispute is correct, he is still not divested of jurisdiction to consider complaints brought pursuant to the ordinance. Appellant would still have the power or right to act. If the ordinance is defective, it is not for jurisdictional reasons. Just as the circuit courts of this state would not lack jurisdiction to consider criminal actions brought pursuant to state statute, if said statute were believed to be unconstitutional,

neither is traffic court divested of authority to consider actions brought pursuant to ordinances. The circuit courts, traffic court, or this Court might refuse to enforce the statute or ordinance in question, but this would be solely due to the enactment's unconstitutional nature and not due to any lack of power (jurisdiction) in the court. The statute conferring jurisdiction on the traffic court in this case could not be more clear.

Appellant advances two arguments, not of constitutional dimension, in support of his allegation that § 39-1-52 of the Detroit Municipal Code is invalid: (1) the state Legislature in passing various provisions regulating prostitution has preempted this area, thus prohibiting additional legislation by municipalities, and (2) the ordinance is in direct conflict with the state law regulating the same conduct, especially in so far as its penalties are concerned.

Initially, it must be noted that "preemption" and "conflict" are separate doctrines upon which a municipal ordinance may be found to be invalid. The preemption doctrine provides that a municipal ordinance may not invade a field completely occupied by state statute. Where the state has preempted the field, the ordinance is void, irrespective of whether the statute and ordinance conflict. The conflict doctrine only invalidates ordinances actually in conflict with the state law where the entire area has not been preempted. *City of Howell v Kall,* 341 Mich 585, 590-591; 67 NW2d 704 (1954), *Miller v Fabius Twp Board,* 366 Mich 250, 258; 114 NW2d 205 (1962), *People v Llewellyn,* 401 Mich 314, 322; 257 NW2d 902 (1977), *Detroit v Judge, Recorder's Court Traffic and Ordinance Division,* 56 Mich App 224, 227-228; 223 NW2d 722 (1974). Since the conflict aspect of

this case is raised in a later issue, any conflict between the state law and ordinance will be considered only insofar as this conflict shows a legislative intent to preempt the area.

Before beginning our discussion of preemption and conflict, it is important that we note that Detroit is a home rule city. MCL 117.1 *et seq.;* MSA 5.2071 *et seq.* As such, the city has a broad power to legislate. In *People v Sell,* 310 Mich 305, 315-316; 17 NW2d 193 (1945), the Michigan Supreme Court stated:

"[T]he police power of Detroit as a home rule city is of the same general scope and nature as that of the State. Therefore, authorities relating to the police power of the State are equally applicable in relation to the police power of the city.

\* \* \*

" 'It [police power] has for its object the improvement of social and economic conditions affecting the community at large and collectively with a view to bring about "the greatest good of the greatest number." Courts have consistently and wisely declined to set any fixed limitations upon subjects calling for the exercise of this power. It is elastic and is exercised from time to time as varying social conditions demand corrections.' "

See also *Dooley v Detroit,* 370 Mich 194, 210; 121 NW2d 724 (1963).

Preemption is said to occur where there is legislative intent to regulate an entire area and an ordinance which conflicts with this intent. *Detroit v Judge, Recorder's Court, Traffic & Ordinance Division, supra.* In *Llewellyn, supra,* 323-324, the Supreme Court adopted the following guidelines to be applied in determining if there has been preemption:

"First, where the state law expressly provides that

the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted *[sic]. Noey v Saginaw*, 271 Mich 595; 261 NW 88 (1935).

"Second, pre-emption of a field of regulation may be implied upon an examination of legislative history. *Walsh v River Rouge*, 385 Mich 623; 189 NW2d 318 (1971).

"Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. *Grand Haven v Grocer's Cooperative Dairy Co*, 330 Mich 694, 702; 48 NW2d 362 (1951); *In re Lane*, 58 Cal 2d 99; 22 Cal Rptr 857; 372 P2d 897 (1962), *Montgomery County Council v Montgomery Ass'n, Inc*, 274 Md 52; 325 A2d 112, 333 A2d 596 (1975). While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.

"Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." (Footnotes omitted.)

Appellant's preemption argument is based on the third and fourth guidelines. Judge Hague contends that there exists a strong civil liberties claim that uniformity is required in regulating prostitution. However, he never states exactly what this strong interest is. On this point, *Llewellyn, supra,* 324-325, indicated that where the nature of the regulated subject matter calls for adaptation to meet local conditions, ordinances adopted by municipalities have generally been upheld.

This Court finds no basis for appellant's assertion that prostitution requires a statewide regulatory scheme. The Supreme Court in *People v Hanrahan*, 75 Mich 611, 616-617; 42 NW 1124 (1899), addressed this very issue and stated:

"That the suppression of houses of ill fame in a city is

a matter of great local concern there can be no question. That it can be dealt with more effectively by the city authorities than by the State, I think is plain. It would be contrary to the fact to assert that houses of ill fame in the midst of a city are not dangerous and revolting nuisances. They contaminate the morals of society, and render respectable neighborhoods obnoxious to decent people by their presence. Their suppression demands the closest attention of the guardians of the peace, and the most stringent police regulations to accomplish the object."

See also *People v Mallette,* 79 Mich 600; 44 NW 962 (1890).

Although appellant can point to no contrary decision, he attacks *Hanrahan* as inapplicable to modern society. We find no basis for his contention and, in fact, note that the number of prostitution cases brought before his court further supports the need for local regulation and supervision in this area and at this time. Furthermore, *Hanrahan,* being a decision of the Supreme Court of this state, is precedent establishing and binding until it is overturned.

It has recently been recognized by the Minnesota Supreme Court that prostitution is a vice of particular concern for large cities. *State v Dailey,* 284 Minn 212; 169 NW2d 746 (1969). In *Dailey,* the court dealt with many of the issues raised in Judge Hague's opinion and, on the preemption question, wrote:

"We take judicial notice that our legislature has in this recent decade moved on several fronts to assist, but not to replace, local government in meeting the extraordinary needs of the metropolitan area, such as the elimination of conditions which diminish the quality of urban life. We are averse, in these circumstances, to hold that the legislature contemplates its own regula-

tion to exclude municipal regulation, without most clear manifestation of such intent. It is imperative, if we are to give faithful effect to legislative intent, that the legislature should manifest its preemptive intent in the clearest terms." *Id.,* 214-215.

In *Llewellyn, supra,* which involved an ordinance regulating obscenity, the court held that obscenity offenses demanded uniform, statewide treatment. The court's conclusion was based on the legal morass which would be created by allowing individual communities to define the line between obscenity and protected speech. The court feared that free expression would be chilled and that a balkanized system would result in confusion and endless appeals. No comparable problems are raised by local prostitution ordinances. The terms accosting, soliciting, and prostitution are all understandable. There is no problem with distinguishing legitimate speech and association from the prohibited acts. In *Morgan v Detroit,* 389 F Supp 922 (ED Mich, 1975), constitutional challenges were raised to Detroit's accosting and soliciting ordinance and massage parlor ordinances. In response to a vagueness argument, the court noted that "[t]he terms 'accosting and soliciting', 'prostitution', and 'fornication' are on their face precise and give fair notice of what conduct is forbidden". *Id.,* 929. In contrast to *Llewellyn, Morgan* also held that the speech incident to accosting and soliciting does not merit First Amendment protection. *Id.,* 927.

Consequently, appellant's position ultimately rests only on the breadth and detail of the statutory scheme. The *Llewellyn* Court specifically held that a state regulatory scheme generally is not sufficient by itself to imply preemption. See also *Detroit v Judge, Recorder's Court Traffic and Ordinance Division, supra, Detroit v Judge, Recorder's*

*Court, Traffic & Ordinance Division,* 71 Mich App 414; 248 NW2d 566 (1976).

Judge Hague's next attack upon the ordinance is that it is in conflict with the state statute. Appellant's attack is three-pronged. He finds conflict because (1) the ordinance makes noncriminal those acts made criminal by state law, (2) the ordinance alters the state-prescribed punishment scheme for second and third offenders, and (3) the ordinance provides for a mandatory penalty.

Judge Hague believes that violation of an ordinance does not constitute a crime. This subject was addressed by the Supreme Court in *People v Goldman,* 221 Mich 646; 192 NW 546 (1923), where, quoting from *Hanrahan, supra,* 620, the Court stated that:

" 'Whenever a person does an act which is prohibited by law, which act is punishable by fine, penalty, forfeiture, or imprisonment, he commits a crime[.]' " *Goldman, supra,* 649.

The *Goldman* Court then went on to say that:

"[A]n ordinance validly enacted is—'as much the law of the land for that locality as a law enacted by the legislature; and a person violating it commits an offense, and in one sense a crime, for which he may be sentenced.' " *Id.,* 649-650.

In *Hanrahan, supra,* 620, there is explicit authority for the proposition that ordinance violations do constitute criminal acts. In that case, the Supreme Court held:

"The words are used interchangeably in our compilations. Whenever a person does an act which is prohibited by law, which act is punishable by fine, penalty, forfeiture, or imprisonment, he commits a crime.

"An ordinance, validly enacted, prohibiting certain acts under fines, penalties, or imprisonment, is, within the jurisdiction of the municipality enacting it, as much entitled to respectful obedience, and is as much the law of the land for that locality, as a law enacted by the Legislature; and a person violating it commits an offense, and in one sense a crime, for which he may be sentenced, if under the authority of a statute the ordinance so provides, to imprisonment at hard labor."

In *People v Burnett,* 55 Mich App 649, 654-655; 223 NW2d 110 (1974), *lv den* 393 Mich 765 (1974), this Court dealt with the question of whether a person charged with violating a municipal ordinance which provided for incarceration as a punishment was guaranteed the right to trial by jury as guaranteed by Const 1963, art 1, § 20, and stated:

"We, therefore, hold that where, as here, a defendant is charged with violating a municipal ordinance which is in terms identical to a section of the general criminal legislation of the state or where the ordinance authorizes incarceration as a permissible sentencing alternative, said violation of such ordinance is a crime * * *."

See also *People v McMillan,* 68 Mich App 113; 242 NW2d 518 (1976), *lv den* 399 Mich 825 (1977).

Although we hold that an ordinance violation can properly be labelled a criminal act, assuming *arguendo* that it cannot, Judge Hague's reasoning is still flawed. Appellant's argument rests on this syllogism: (1) an ordinance cannot permit what a statute prohibits; (2) an ordinance violation is not a criminal act; (3) therefore, the ordinance *permits,* by making conduct noncriminal, that which is criminal under state law. Whether or not an ordinance violation can be labelled criminal, and we believe that it can, to say that the ordinance

*permits* accosting and soliciting is clearly untenable. It would certainly come as a surprise to a defendant who had been sentenced to the 20-day minimum under the ordinance to learn that the municipality permits accosting and soliciting.

Appellant also contends that a direct conflict exists between statute and ordinance in that the statute provides for progressive punishment of one year and two years upon a second and third conviction for accosting and soliciting for prostitution. MCL 750.451; MSA 28.706. The Detroit ordinance does not have such a progressive punishment scheme. Indeed, because the maximum penalty for ordinance violations is 90 days or $500, the city could not enact such a scheme.

Whether or not a conviction of an individual as a second or third offender under the state statute could be supported by a conviction under the city ordinance presents an interesting question. Again, though, this is a question which is not properly before this Court.

Appellant's next contention—and the last to which we shall address ourselves—gives us greater pause. Judge Hague states that a municipal body does not have the power to enact a mandatory penalty for violation of an ordinance. The statutory starting point for discussion of this issue is the home rule act, MCL 117.4i(10); MSA 5.2082(10), which provides in pertinent part:

"Sec. 4-i. Each city may in its charter provide:

\* \* \*

"(10) For the punishment of those who violate its laws or ordinances, but no punishment shall exceed a fine of $500 or imprisonment for 90 days, or both, in the discretion of the court: said imprisonment may be in the county jail or city prison, or in any workhouse in

the state authorized by law to receive prisoners from such city."

Judge Hague contends that the state Legislature in enacting the home rule statute intended to leave municipalities without the power to fix mandatory minimum sentences. The same contention of Judge Hague as to a mandatory penalty contained in Detroit Municipal Code § 66-5-1 was rejected by this Court in *Detroit v Judge, Recorder's Court,* 71 Mich App 414, 416-417, wherein we stated:

"We do not read the language as imposing a restriction on a city's authority to provide for a mandatory minimum penalty for violation of its ordinances. Such a reading would be contrary to existing law, *People v Smith,* 94 Mich 644, 646; 54 NW 487 (1893). The power to fix minimum and maximum penalties is in the Legislature, and we find no logical reason for differentiating between state and municipal legislatures."

In 71 Mich App 414, this Court ruled that municipalities could impose mandatory minimum sentences so long as they did not exceed the statutory maximums.

Judge Hague argues, as he did in the previously-cited case, that the words "in the discretion of the court" in the home rule statute make it clear that it was the legislative intent to restrict the authority of cities to impose mandatory sentences. We believe now, as then, that the language of the statute means only "that penal sanctions imposed by cities cannot exceed a fine of $500 or 90 days imprisonment, or both, and that the court may sentence a violator to a fine, imprisonment, or both within these limits". 71 Mich App at 416.

Appellant argues that the above-cited case is

distinguishable from the instant case because the ordinance in question in 71 Mich App 414 imposed no limitations on the judge's exercise of discretion. Since that opinion does not indicate that such consideration was relevant to its holding, we find no grounds for Judge Hague's speculation.

As we have stated, although we find no true conflict between the language of the home rule statute and the mandatory-minimum penalty provided for by the ordinance, we do believe that this is a valid question. We are not certain that the mandatory jail sentence of the municipal ordinance enhances the penalty provided for by state statute. If, however, "mandatory" is interpreted as "greater", we cite *Kalita v Detroit,* 57 Mich App 696, 705; 226 NW2d 699 (1975), *lv den* 394 Mich 810 (1975), for the proposition that *"the mere fact that the ordinance authorizes the imposition of a greater penalty than does the statute, will not necessarily invalidate the ordinance".* (Footnotes omitted.) (Emphasis supplied.) We note that we find *Green v Dearborn Municipal Court,* 31 Mich App 591; 188 NW2d 98 (1971), which found a city traffic ordinance providing for a fine of $500 upon conviction of drunk driving invalid to the extent that it conflicted with a state statute providing for a maximum fine of $100, distinguishable from *Kalita, supra,* because in *Green,* the Court found that the statute required statewide uniformity.

While we find the reasoning of 71 Mich App 414, *supra,* persuasive, we can see that Judge Hague's interpretation of the language of the statute is also plausible. It is, nevertheless, our view that there is no indication that the state Legislature intended to prohibit municipalities from passing mandatory minimum sentencing provisions. In view of the fact that the Legislature did not

amend the statute in question following this Court's decision in 71 Mich App 414, we find that the Legislature did not intend to remove from municipalities the power to fix mandatory minimum sentences. See *In re Clayton Estate,* 343 Mich 101, 106-107; 72 NW2d 1 (1955).

Moreover, the home rule act grants general rights and powers subject only to certain enumerated restrictions. Its purpose was to give cities a large measure of home rule. The statute should be construed liberally in the home rule spirit. *Gallup v City of Saginaw,* 170 Mich 195; 135 NW 1060 (1912), *People v Sell,* 310 Mich 305, 312-313; 17 NW2d 193 (1945).

MCL 117.4i(10); MSA 5.2082(10) grants to a city the general power to adopt penalties for ordinance violators but limits the maximum punishment. It contains no specific restriction on the power of a city as to the minimum penalty which may be provided, as to a lower maximum penalty, or as to a fixed penalty. We view the language "in the discretion of the court" to be words of explanation commonly appended to the words "fine or imprisonment or both", rather than as an intentional additional restriction on the general legislative power granted to the city, with such explanatory words to be applied within the range of penalties established by the particular city ordinance. We therefore find that the trial court's holding that the ordinance and the statute are not irredeemably in conflict was correct.

In conclusion, we have previously noted that the City of Detroit has indicated in oral arguments on this appeal that it desired this Court to confine its opinion to the appropriateness of the order of superintending control. We have interpreted this to mean that the city is not interested in having

us uphold the January 30, 1980, adjudication of contempt. We therefore vacate Judge Hague's contempt citation.[3]

Let us reiterate that our discussion of many of the issues raised by Judge Hague was at his request. It is our hope that our rulings on these questions will provide clarification and guidance to Judge Hague as well as to the City of Detroit.

The single issue on appeal, however, remains the appropriateness of the circuit court's order of superintending control. It is this Court's holding that because a generalized practice of a lower court was being challenged and because an appeal would not have provided the city with an adequate remedy, the circuit court's order of superintending control was entirely proper, and it is upheld.

As has been stated, ordinances come to us with the presumption of validity. When and if the constitutional issues raised by Judge Hague are appealed by an aggrieved party, we feel certain that these questions will receive close scrutiny. As of now, however, such issues are not ripe for adjudication, no concrete factual situation having presented itself.

Until such time that another panel of this Court rules to the contrary on the identical issues or the Supreme Court of this state decides to review the questions raised in this appeal, the decision of this Court is the law of this jurisdiction and is binding upon all inferior courts.

Affirmed in part, vacated in part at the city's request. No costs, a public question being involved.

[3] Although we are vacating the contempt citation at the city's request, Judge Dunn's order remains in effect.