RENTAL PROPERTY OWNERS ASSOCIATION OF KENT COUNTY v
CITY OF GRAND RAPIDS

Docket No. 102642. Argued November 13, 1996 (Calendar No. 13).
    Decided July 15, 1997.

> Rental Property Owners Association of Kent County brought an
> action in the Kent Circuit Court against the City of Grand Rapids
> challenging the validity of Grand Rapids Ordinance No. 93-39,
> which provides that rental properties found to be sites of illegal
> drug use or prostitution may be declared a public nuisance by the
> city commission and padlocked. The court, Michael R. Smolenski,
> J., denied the plaintiff's motion for summary disposition, holding
> that the ordinance is specific in defining the scope of review and
> that the standard of review is appropriate and legally sufficient to
> protect the rights of aggrieved parties. The Court of Appeals, NEFF,
> P.J., and SAWYER and MURPHY, JJ., reversed, concluding that the pad-
> locking of property requires the exercise of a court's equitable pow-
> ers and must be achieved in a court of appropriate jurisdiction, not
> before a legislative body such as the city commission, and that its
> restriction of the jurisdiction of the circuit court is violative of
> Const 1963, art 6, § 13 (Docket No. 174452). The defendant appeals,
> and the plaintiff cross appeals.
>
> In an opinion by Justice WEAVER, joined by Justices BRICKLEY,
> BOYLE, and RILEY, the Supreme Court *held*:
>
> The Michigan nuisance abatement statute, MCL 600.3801 *et seq.*;
> MSA 27A.3801 *et seq.*, does not preempt the Grand Rapids padlock
> ordinance. The ordinance is constitutional on its face and a valid
> exercise of municipal police power.
>
> 1. As a home rule city, Grand Rapids has the authority to enact
> and enforce ordinances, subject to the constitution and law. Nui-
> sance abatement, as a means to promote public health, safety, and
> welfare, is a valid goal of municipal police power. Because illegal
> drug use and prostitution threaten this goal, the enactment of the
> nuisance abatement ordinance was a valid exercise of the Grand
> Rapids police power.
>
> 2. The Michigan nuisance abatement statute neither expressly
> nor impliedly preempts municipal nuisance abatement ordinances.
> Nor does it require uniformity of abatement procedures. Rather, it

provides a mechanism for abating nuisances and does not inhibit municipalities from providing alternative and consistent means to do so. The statute does not occupy the field the ordinance addresses. Parallel subject matter does not require a finding of pre-emption. The Grand Rapids padlock ordinance does not permit anything that the public nuisance statute prohibits, nor does it prohibit anything that the statute permits. Thus, it does not directly conflict with the statute. Because the nuisance abatement statute was not intended to occupy the field of nuisance abatement and because the ordinance does not directly conflict with the statute, the ordinance is not preempted.

3. Padlocking is not forfeiture; it involves no loss of title. Nor is it a novel exercise of municipal police power. Further, the padlock ordinance does not violate the doctrine of separation of powers. Municipal government in Michigan typically has not been divided among three branches of government, and the home rule cities act explicitly permits the blending of legislative and executive functions. Nor does the ordinance unlawfully limit the jurisdiction of the circuit court. The legislative body of a city is specifically authorized to act in a quasi-judicial fashion. Finally, the ordinance meets due process requirements of notice and hearing.

Reversed.

Justice CAVANAGH, dissenting, stated that Grand Rapids Ordinance No. 93-39 is impliedly preempted and therefore invalid.

The Michigan nuisance abatement statute, MCL 600.3801 *et seq.*; MSA 27A.3801 *et seq.*, addresses the problems of illegal drugs and prostitution and, in conjunction with MCR 3.601, sets forth the procedure applicable statewide for determination and abatement of a public nuisance. Uniformity is of paramount importance. Violations of the Grand Rapids ordinance can only be determined, and penalties enforced, by a state court because the city does not have a municipal court. The state has an obvious interest in applying uniform rules of evidence and procedure in its courts. Furthermore, all the concerns expressed by the City of Grand Rapids in enacting its ordinance are addressed and provided for in the state nuisance abatement statute. There is no reason to assume that the blight visited on Grand Rapids by the criminal activities at issue is more consequential than that suffered by any other affected community in this state. To the extent that the Grand Rapids ordinance differs from the nuisance abatement statute, it is in direct conflict with the statute.

Even if the social ills the City of Grand Rapids sought to interdict were matters of uniquely local concern, and therefore within the city's administrative purview, the attempt to confer on itself the

power to determine the existence of a public nuisance still would be an improper encroachment on a purely judicial function, as clearly contemplated in and defined by statute. Maintaining a nuisance is a public offense, and the fact, as in other cases of alleged criminality, is to be tried on proper accusation and in the regular courts.

Chief Justice MALLETT, dissenting, stated that in vesting the authority to adjudicate violations of the Grand Rapids padlock ordinance in the city commission, not the courts, the ordinance attempts to give the city commission authority beyond that permitted by Const 1963, art 1, § 17, art 6, § 1, the home rule cities act, and US Const, Am XIV. Municipalities have no inherent power, and may exercise only those powers the state confers upon them. They may not exercise judicial power.

The Grand Rapids padlock ordinance cannot properly be characterized as conferring only permitted quasi-judicial powers on the city commission. Traditional notions of due process require a proper adjudication before an impartial tribunal that is designed to protect the rights of the individual, i.e., the exercise of judicial power. While cities have broad authority, and nuisance abatement is a valid goal of municipal governments, a municipality cannot usurp the role of the judiciary in adjudicating ordinance violations.

Justice KELLY took no part in the decision of this case.

209 Mich App 391; 531 NW2d 731 (1995) reversed.

*Murray, Pawlowski & Flakne, L.L.P.* (by *George E. Pawlowski*), for the plaintiff.

*Philip A. Balkema*, City Attorney, and *Michael D. McGuire* and *Margaret P. Bloemers*, Assistant City Attorneys, for the defendant.

Amicus Curiae:

*Varnum, Riddering, Schmidt & Howlett, L.L.P.* (by *Peter Armstrong* and *George B. Davis*), for Michigan Municipal League.

WEAVER, J. This case presents a facial constitutional challenge to a nuisance abatement ordinance (padlock ordinance) adopted by the Grand Rapids City Commission. Ordinance No. 93-39. The ordinance

authorizes the commission to declare a property a public nuisance if it is found to be used repeatedly for illegal drugs or prostitution. Further, properties declared to be public nuisances may be padlocked for up to one year and the property owner assessed the costs of abatement.

For the reasons set forth below, we hold that the ordinance is constitutional on its face. Further, we find that the state nuisance abatement statute, MCL 600.3801 *et seq.*; MSA 27A.3801 *et seq.*, does not preempt the Grand Rapids ordinance. The decision of the Court of Appeals is reversed.

I

On September 7, 1993, the Grand Rapids City Commission adopted Ordinance No. 93-39.[1] The ordinance provides that rental properties found to be sites of illegal drug use or prostitution can be declared a public nuisance by the city commission, and, pursuant to such declaration, the city commission can order the property to be vacated and padlocked for a period of up to one year.[2] Relevant to this appeal, the ordinance contains the following provisions:

Section 9.702 sets forth the city commission's legislative findings that the repeated use, sale, furnishing, giving or possession of controlled substances or drug paraphernalia, or the use of property for purposes of prostitution or solicitation for prostitution may result in declaration of a public nuisance. According to the

---

[1] Ordinance No. 93-39 replaced an earlier ordinance, No. 92-07, that had been repealed after being struck down by the Kent Circuit Court on the ground that it did not provide adequate hearing procedures.

[2] The record contains no evidence that defendant has attempted to enforce Ordinance No. 93-39 against any party.

commission, the public nuisance results from the
increased criminal activity that occurs in the neigh-
borhood surrounding the relevant property, increased
pedestrian and vehicular traffic in the neighborhood,
the fear engendered in the minds of neighbors, and
the disruption of the peace and quiet of the residents
of the neighborhood.

In § 9.703 the commission states that it may declare
by resolution that property used in the proscribed
activities is a public nuisance and may order that the
nuisance be abated as provided in the ordinance.

Section 9.704 sets forth the procedure for declara-
tion of a public nuisance, including that notice be
given to the owner of the property, who then has the
opportunity to be heard 'at a public evidentiary hear-
ing before the city commission, sitting as an adminis-
trative body as provided for in title V, § 1 of the city
charter, and acting in a quasi-judicial capacity. The
commission is authorized to make the determination
whether a public nuisance exists under the standards
established by the ordinance.

Section 9.705 provides that if the commission deter-
mines by a preponderance of the evidence that a
property is a public nuisance, it may by resolution
order abatement of the nuisance, which includes pad-
locking the property for a period of up to one year.

Section 9.709 provides that an aggrieved property
owner may appeal to the circuit court, which shall
review the city commission's decision and determine
whether that decision is in violation of the law, has
been procured by fraud, or is an abuse of discretion;
additionally, the circuit court will review the commis-
sion's decision to determine if it is supported by com-
petent, substantial, and material evidence on the

whole record. Review by the circuit court is to be carried out on the basis of the record made before the city commission.

Defendant City of Grand Rapids asserts that in passing this ordinance it was addressing an issue of immediacy and great significance to the city. Defendant states that it was confronted with intolerable deterioration and destruction of some of its inner city neighborhoods.

Shortly after the adoption of Ordinance No. 93-39, plaintiff Rental Property Owners Association of Kent County (RPOA) commenced this action in the Kent Circuit Court, challenging the ordinance on several constitutional grounds. Plaintiff alleged inter alia that the ordinance is unconstitutional under Const 1963, art 3, § 2, and art 6, § 1, in that it constitutes a usurpation of the judicial power by a legislative body; that it violates art 6, § 13 by attempting to limit the original jurisdiction of the circuit court and, furthermore, by attempting to confer appellate jurisdiction upon that court; that the ordinance violates substantive due process under the Fourteenth Amendment of the United States Constitution, and Const 1963, art 1, § 17, by putting plaintiff's members at risk of being deprived of their property without due process of law; and that it violates 42 USC 1983 in that it threatens, under color of law, to deprive plaintiff's members of their liberty and property without due process of law, in violation of the Fourteenth Amendment. Plaintiff sought a judgment declaring the ordinance to be unconstitutional, and also sought a permanent injunction barring defendant from enforcing the ordinance.

Plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(9) and (10), alleging that

defendant had failed to state valid defenses to the claims asserted as a matter of law, and that there was no genuine issue with respect to any material fact, thereby entitling plaintiff to judgment as a matter of law. The circuit court heard oral arguments and subsequently issued a written opinion denying plaintiff's motion for summary disposition. The court noted that Ordinance No. 93-39 was enacted in response to the court's previous order enjoining Ordinance No. 92-07 on the ground that that ordinance provided an inadequate hearing procedure. In then ruling on the complaint at issue in the case at bar, the circuit court restricted itself to the issue of the scope of appeal provided by the ordinance, indicating that this was the "sole failing that the previous ordinance was found to have had by this Court." Judge Smolenski then concluded: "This new ordinance . . . is specific in defining the scope of review by Circuit Court and clearly requires that a record be made of proceedings before the City Commission. It is the Opinion of this Court that that standard of review or scope of appeal is appropriate and legally sufficient to protect the rights of aggrieved parties." *Id.* Accordingly, the circuit court denied plaintiff's request for declaratory judgment and injunctive relief.

In a unanimous opinion, the Court of Appeals reversed the circuit court, concluding "that the ordinance suffers from numerous constitutional flaws." 209 Mich App 391, 393; 531 NW2d 731 (1995). Specifically, the Court of Appeals held "that the padlocking of property requires the exercise of a court's equitable powers and, therefore, must be achieved by an action in a court of appropriate jurisdiction, not before a legislative body such as the city commis-

sion." *Id.* at 394-395. The Court of Appeals also concluded that the ordinance's purported restriction of the jurisdiction of the circuit court is violative of Const 1963, art 6, § 13, which provides that the circuit court shall have jurisdiction in all matters not prohibited by law. *Id.* at 395.

II

The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinance does not conflict with the constitution or general laws. *Austin v Older*, 283 Mich 667, 674; 278 NW 727 (1938). Further, ordinances exercising police powers are presumed to be constitutional, *Fass v Highland Park (On Rehearing)*, 321 Mich 156, 161; 32 NW2d 375 (1948), and the burden is on the challenger to prove otherwise. *Cady v Detroit*, 289 Mich 499; 286 NW 805 (1939).

A

HOME RULE CITIES

Grand Rapids is a home rule city. Home rule cites have broad powers to enact ordinances for the benefit of municipal concerns under the Michigan Constitution. Const 1963, art 7, § 22 provides:

> Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this

constitution shall limit or restrict the general grant of authority conferred by this section.

Art 7, § 34 of the Michigan Constitution states further:

> The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor.

The authority of home rule cities to enact and enforce ordinances is further defined by the home rule cities act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.* It provides in relevant part:

> For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not, for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state. [MCL 117.4j(3); MSA 5.2083(3).]

The home rule cities act is intended to give cities a large measure of home rule. It grants general rights and powers subject to enumerated restrictions. *Detroit v Walker,* 445 Mich 682, 690; 520 NW2d 135 (1994); *Conroy v Battle Creek,* 314 Mich 210; 22 NW2d 275 (1946).

B

NUISANCE ABATEMENT

It is well established that nuisance abatement, as a means to promote public health, safety, and welfare, is a valid goal of municipal police power. *Cady,*

*supra; People v McKendrick,* 188 Mich App 128, 139; 468 NW2d 903 (1991); *Moore v Detroit (On Remand),* 159 Mich App 199, 202; 406 NW2d 488 (1987). The home rule cities act specifically requires home rule city charters to provide

> [f]or the public peace and health and for the safety of persons and property [and] [p]ublic peace, health, and safety services may include the . . . prevention of drug abuse . . . . [MCL 117.3(j); MSA 5.2073(j).][3]

The City of Grand Rapids enacted Ordinance No. 93-39 to address deterioration of inner city neighborhoods resulting from proliferation of properties being used for illegal drugs and prostitution. The ordinance declares properties used repeatedly for the

> use, sale, furnishing, giving or possession of controlled substances or drug paraphernalia . . . or . . . violation of the controlled substances or drug paraphernalia laws or for purposes of prostitution or soliciting for prostitution . . .

to be public nuisances. Section 9.702. The ordinance states further that such a nuisance results from

> increased criminal activity that occurs in the neighborhood surrounding the property, increased pedestrian and/or vehicular traffic in the neighborhood surrounding the property, the fear engendered in the minds of neighbors and the peace and quiet of residents living in the neighborhood surrounding the property being disturbed.

---

[3] This opinion does not address the authority of other levels of local government to abate nuisances as that authority may vary under different controlling statutes.

Evidently, the existence of alternative methods of control and abatement of illegal drug use and prostitution have proven ineffective or overly general to arrest the proliferation of illegal drug use and prostitution in Grand Rapids.[4] It is indisputable that such activities threaten the public health, safety, and welfare, and, therefore, we find the enactment of the nuisance abatement ordinance to be a valid exercise of the Grand Rapids police power.[5]

C

PREEMPTION

The dissent of Justice CAVANAGH would hold that the ordinance is preempted by Michigan's nuisance abatement statute and, therefore, does not address the constitutional questions presented. The dissent relies exclusively on unsubstantiated assumptions regarding the pervasiveness of the state nuisance abatement statute and the "very significant interest in statewide uniformity" in the regulation of properties used for illegal drugs and prostitution. *Post*, p 278. The dissent does this despite the constitutional mandate that the authority of municipalities to enact and enforce ordinances is to be liberally construed. Const 1963, art 7, §§ 22 and 34.

A municipality's power to adopt ordinances related to municipal concerns is "subject to the constitution

---

[4] There are procedures available to landlords to evict tenants engaging in illegal drug use. MCL 600.5714; MSA 27A.5714. There are also nuisance abatement actions that may be pursued by citizens or law enforcement to address the situations the City of Grand Rapids seeks to remedy. MCL 600.3801; MSA 27A.3801.

[5] See *Detroit v Recorder's Court Judge*, 104 Mich App 214, 233; 304 NW2d 829 (1981) (holding that prostitution was a valid subject matter for regulation by municipalities and did not require statewide regulation).

and law." Const 1963, art 7, § 22. This Court has long held that the existence of a nuisance abatement statute does not prohibit municipalities from passing or enforcing nuisance abatement ordinances. *People v Detroit White Lead Works*, 82 Mich 471, 479; 46 NW 735 (1890). However, as the dissent notes, a municipal ordinance is preempted by state law if 1) the statute completely occupies the field that ordinance attempts to regulate, or 2) the ordinance directly conflicts with a state statute.

In *People v Llewellyn*, 401 Mich 314, 323-324; 257 NW2d 902 (1977), this Court set forth guidelines for determining whether a statute has preempted municipal ordinances by completely occupying the field of regulation:

> First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted. *Noey v Saginaw*, 271 Mich 595; 261 NW 88 (1935).
>
> Second, pre-emption of a field of regulation may be implied upon an examination of legislative history. *Walsh v River Rouge*, 385 Mich 623; 189 NW2d 318 (1971).
>
> Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. *Grand Haven v Grocer's Cooperative Dairy Co*, 330 Mich 694, 702; 48 NW2d 362 (1951); *In re Lane*, 58 Cal 2d 99; 22 Cal Rptr 857; 372 P2d 897 (1962); *Montgomery County Council v Montgomery Ass'n, Inc*, 274 Md 52; 325 A2d 112, 333 A2d 596 (1975). While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.
>
> Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

The dissent recognizes that the state nuisance abatement statute, MCL 600.3801; MSA 27A.3801, does not expressly preempt municipal nuisance ordinances and that no legislative history implies preemption. The dissent, therefore, relies on the third and fourth prongs of field-preemption analysis: the pervasiveness of the statutory scheme and the state's need for uniformity.[6]

However, the dissent does not point to any state interest in having uniform nuisance abatement laws.[7] Rather, to support its argument for the need for uniformity, the dissent cites § 52(b) of the Grand Rapids City Charter.[8] Despite the assertion to the contrary, the language of this charter provision in no way demonstrates a *state* interest in uniformity. And although this section of the charter follows nearly verbatim the language of MCL 117.4i(10); MSA 5.2082(10) of the

---

[6] I note that the Michigan case relied on in *Llewellyn* for the pervasiveness guideline does not expressly discuss the concept of pervasiveness; rather, the case finds that the Legislature expressly intended the state to have "plenary control" over the subject matter. See *Grand Haven v Grocer's Cooperative Dairy Co, supra*, pp 701-702. Further, *People v Llewellyn* cites no authority for the uniformity guideline.

[7] I question the emphasis placed on the uniformity guideline by the dissent. Where the Legislature deems uniformity to be necessary, it has the ability to expressly preempt municipal regulation. Further, as will be discussed below, the constitution and the home rule cities act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*, afford municipalities broad powers to act on behalf of municipal concerns.

[8] The Grand Rapids City Charter, § 52(b) states:

To provide for the punishment of those who violate the ordinances, but no punishment shall exceed a fine of $500 or imprisonment for 90 days in the county jail or house of correction, or in any work house authorized by law to receive prisoners from the City, or by both such fine and imprisonment in the discretion of the Court.

home rule cities act,[9] this Court has long recognized that this language does not apply to actions that involve the protection of the public health. *Prawdzik v Grand Rapids*, 313 Mich 376, 385; 21 NW2d 168 (1946).

We do not believe that uniformity of nuisance abatement procedures is necessary to further the state's interest, because the Grand Rapids padlock ordinance does not inhibit the state's ability to abate nuisances. The state statute, MCL 600.3801 *et seq.*; MSA 27A.3801 *et seq.*, defines nuisance to include the use of a place for prostitution or "the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance . . . ." MCL 600.3801; MSA 27A.3801. It allows, but does not require, the Attorney General, a county prosecutor, or a private citizen to bring an action to enjoin the nuisance and to abate the nuisance by padlocking a property for a period of one year. MCL 600.3805; MSA 27A.3805 and MCL 600.3825; MSA 27A.3825. The Grand Rapids padlock ordinance does nothing to restrict or interfere with proceedings under the state statute.

The nuisance abatement statute is distinguishable from statutes that this Court has found express or imply the need for uniform regulation. For example, this Court has found that the control of alcoholic bev-

---

[9] This provision of the home rule cities act was amended by 1991 PA 175, 1994 PA 17, and 1994 PA 313. The revised section no longer mentions court involvement. It states in full:

For the punishment of persons who violate city ordinances. However, the penalty for a violation of a city ordinance shall not exceed a fine of $500.00, or imprisonment for 90 days, or both. [MCL 117.4i(k); MSA 5.2082(k).]

erages, the pasteurization of milk, and the definition of obscenity are subjects requiring statewide regulation.[10] Interestingly, *Llewellyn* was the first case in which the statutory schemes held to require uniformity did not *expressly* reserve the subject matter to the state. The nuisance abatement statute neither expresses nor implies such need for uniformity. While the nuisance abatement statute states that nuisances shall be enjoined as provided by the statute, MCL 600.3801; MSA 27A.3801, it does not require that a nuisance abatement action be pursued. Rather, the statute provides that an action for equitable relief *may* be maintained. MCL 600.3805; MSA 27A.3805.[11]

The dissent also argues that the pervasiveness of the scope of the nuisance statute weighs in favor of preemption. The dissent, however, does not discuss the assertion, and we do not believe that it is supported by the language of the statute.[12] The statute

---

[10] See, e.g., *Noey v Saginaw* (alcohol), *Grand Haven v Grocer's Cooperative Dairy Co* at 702, and *People v Llewellyn* (definition of obscenity), *supra*.

[11] It is perhaps because the statewide nuisance abatement procedures are underutilized that the City of Grand Rapids and other cities are faced with policing their own.

[12] The nuisance abatement statute provides:

Any building, vehicle, boat, aircraft, or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, or used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance as defined in section 7104 of the public health code, Act No. 368 of the Public Acts of 1978, being section 333.7104 of the Michigan Compiled Laws, or of any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is declared a nuisance, and the furniture, fixtures, and contents of the building, vehicle, boat, aircraft, or place and all intoxicating liquors therein are also declared a nuisance, and all controlled substances and nuisances shall be enjoined and abated as provided in this act and as provided in the court rules.

neither expresses an intent to occupy the field of nuisance abatement to the exclusion of the local communities nor supports any such inference. The statute merely provides a mechanism for abating nuisances, including properties used for controlled substance violations and prostitution. The statute does not inhibit municipalities from providing alternative and consistent means to abate these and other nuisances.

Because there is no evidence that the nuisance abatement statute occupies the field that the ordinance addresses, the dissent must show that the ordinance directly conflicts with the state statute. However, at its core, its preemption analysis rests on the unsupported assertion that the mere existence of a statute preempts local regulation of the same subject matter. The enactment and enforcement of similar nuisance abatement goals and remedies[13] at the local level is not precluded by the preemption doctrine. Parallel subject matter simply does not require a finding of preemption.

In both *Detroit v Qualls*, 434 Mich 340, 362; 454 NW2d 374 (1990),  and *Miller v Fabius Twp Bd*, 366 Mich 250, 256-257; 114 NW2d 205 (1962),  we quoted the following passage approvingly from 56 Am Jur 2d, Municipal Corporations, § 374, pp 408-409:

---

Any person or his or her servant, agent, or employee who owns, leases, conducts, or maintains any building, vehicle, or place used for any of the purposes or acts set forth in this section is guilty of a nuisance. [MCL 600.3801;  MSA 27A.3801.]

[13] The nuisance abatement statute goes further than the Grand Rapids padlock ordinance by also permitting the removal and sale of furniture, fixtures, and contents of the building or place declared to be a nuisance. MCL 600.3825;  MSA 27A.3825.

It has been held that in determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test *is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits.* Accordingly, it has often been held that a municipality cannot lawfully forbid what the legislature has expressly licensed, authorized, permitted, or required, or authorize what the legislature has expressly forbidden.

*        *        *

The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal ordinance are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. *The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription.* Thus, where both an ordinance and a statute are prohibitory, and the only difference between them is that the ordinance goes further in its prohibition but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail. [Emphasis added.]

In this case, the Grand Rapids padlock ordinance does not permit anything that the public nuisance statute prohibits, nor does it prohibit anything that the statute permits. Thus, we find that the ordinance

does not directly conflict with the state nuisance abatement statute.

Because there is no evidence that the nuisance abatement statute intended to occupy the field of nuisance abatement and because the ordinance does not directly conflict with the statute, we hold that the ordinance is not preempted.

D

PADLOCKING

While abatement of properties used for controlled substances or prostitution is a valid goal of the municipal police power, the means by which abatement is accomplished must be reasonable. *Cady*, *supra*, p 513. The plaintiffs argue that the padlocking of a property for up to one year is tantamount to forfeiture. However, we find the analogy to forfeiture unpersuasive.

The forfeiture act requires that a court of competent jurisdiction determine when title to real property is forfeited.[14] In apparent reliance on this rule, the Court of Appeals held that padlocking property "requires the exercise of a court's equitable powers and, therefore, must be achieved by an action in a court of appropriate jurisdiction, not before a legislative body such as the city commission." 209 Mich App, *supra*, pp 394-395. The premise of the holding

---

[14] The forfeiture act provides in part:

*Title* to real property forfeited under this article or pursuant to section 17766a shall be determined by a court of competent jurisdiction. A forfeiture of real property encumbered by a bona fide security interest is subject to the interest of the secured party who neither had knowledge of nor consented to the act or omission. [MCL 333.7523(3); MSA 14.15(7523)(3) (emphasis added).]

of the Court of Appeals is flawed. Padlocking is not forfeiture: it involves no loss of title. While there is certainly a loss of income for a year (either rent coming in or rent for substitute housing), that loss results from a lessor or owner permitting illegal drug use or prostitution to occur "repeatedly" at the property. As cogently stated by Judge KELLY in *Moore, supra,* p 203:

> It is neither unfair nor unjust for the city to impose the burden of abating these nuisances upon the individual owners rather than upon the public as a whole. Neighborhoods don't blight overnight.

The abatement of nuisances by padlocking is not a novel exercise of municipal police power. In *Lenario v Ward,* 129 Misc 2d 326; 492 NYS2d 985 (1985), a New York City ordinance allowing the abatement and padlocking for up to one year of properties used for illegal gaming operations was upheld under the city's police power. Nor is the abatement of nuisances by padlocking the most invasive measure that a local government can take under its police powers.

For example, in *Adams Outdoor Advertising v East Lansing,* 439 Mich 209; 483 NW2d 38 (1992), this Court upheld a municipal ordinance that permitted the City of East Lansing to force billboard owners to bring their billboards into compliance with a newly enacted ordinance. If an existing billboard did not come into compliance within a defined period, the city commission could forcibly terminate the nonconforming billboards. In *Goldblatt v Town of Hempstead,* 369 US 590; 82 S Ct 987; 8 L Ed 2d 130 (1962), the United States Supreme Court upheld a town's ordinance that had the effect of permanently closing

down an active sand and gravel pit within the town limits. In *Young v American Mini Theatres, Inc*, 427 US 50, 71; 96 S Ct 2440; 49 L Ed 2d 310 (1976), the United States Supreme Court upheld a Detroit ordinance that allowed the city to restrict the location of adult uses despite the implication of First Amendment issues. The Court held that Detroit's interest in preserving the character of its neighborhoods outweighed the interest in expression bordering on pornography. Detroit demonstrated that it had an interest in regulating adult uses unrelated to the content of speech and that the restrictions did not totally suppress such speech.

The regulations in *Adams Outdoor Advertising*, *Goldblatt*, and *American Mini Theatres* implicated constitutionally protected interests: property and speech. As emphasized by Chief Justice MALLETT in his dissent, the padlock ordinance does affect a person's "right to live in one's home." *Post*, p 283. However, there is no constitutional right to violate the law in one's home. Thus, we cannot agree with Chief Justice MALLETT that because this padlock ordinance permits a city commission, rather than a court, to declare a property a nuisance, that it threatens the "fabric of the Michigan or United States Constitution." *Id.*, p 284.

Finally, as stated by Justice Stevens in *American Mini Theatres, supra* at 71, cities "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." The padlocking of properties sends a strong message that repeated controlled substance violations or repeated use of a property for prostitution will not be tolerated while not depriving the property owner of title.

### III

In this case, the Court of Appeals struck down the ordinance on two primary grounds: first, it held that the ordinance violates the doctrine of separation of powers, and, second, it held that the ordinance unlawfully limits the jurisdiction of the circuit court. For the reasons below, we disagree and find that the ordinance is constitutional on its face.

### A

#### SEPARATION OF POWERS

The Court of Appeals held that the padlock ordinance violated the separation of powers doctrine. We believe that the Court erred in applying this doctrine to home rule cities.

Const 1963, art 3, § 2, incorporates the separation of powers doctrine into the Michigan Constitution. It states:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.[15]

In *Detroit Osteopathic Hosp v Southfield*, 377 Mich 128; 139 NW2d 728 (1966), we declined to answer whether art 3, § 2 applies only to state government, or whether it applies to local government as well.

---

[15] The Court of Appeals did not cite art 3, § 2 in discussing the separation of powers doctrine, rather, the court cited art 6, § 1. Art 6, § 1 vests the judicial power of the state "exclusively in one court of justice . . . ." The Court of Appeals reliance on this provision can only be explained by its misguided belief that padlocking a property requires the exercise of a court's equitable jurisdiction.

Both the context and history of the provision demonstrate that the provision applies only to state government.

The context of art 3, § 2 suggests that the provision applies only to state government and not to local government. The other sections of article 3 strongly suggest that the term "government" in art 3, § 2 is only intended to include state government. Art 3, § 1 states that "[t]he seat of government shall be at Lansing." Obviously, the term "government" in this section refers only to state, and not local, government.

Furthermore, the history of municipal government in this state suggests that the provision does not apply to localities. Municipal government in Michigan typically has not been divided among three branches of government.[16] Under the city manager form of government, popular among smaller cities, the executive, the city manager, serves at the will of the legislature, the city commission. The home rule cities act explicitly allows this blending of legislative and executive functions, stating, "The city charter may provide for the selection of the mayor by the legislative body." MCL 117.3(a); MSA 5.2073(a). This Court has recog-

---

[16] A treatise on municipal law in Michigan has noted:

The neat concept of separation of powers among the three branches of government is often found wanting when one analyzes Michigan municipalities. The legislature has established a structure that in certain instances provides no clear-cut executive branch, or one too weak to have any practical value. Thus the day-to-day functioning of municipal governing bodies defies the traditional rule of separation of powers; one observes such bodies regularly mixing legislative policy-making with executive or administrative functions. [1 Steingold & Etter, Michigan Municipal Law, § 5.09, p 5-8. See also LeDuc, *Michigan administrative law*, 13 Cooley L R 341, 349 (1996) (criticizing the Court of Appeals application of the separation of powers doctrine to municipalities).]

nized that the legislative bodies of local governments may also exercise executive powers. *Wayne Co Jail Inmates v Wayne Co Sheriff*, 391 Mich 359; 216 NW2d 910 (1974). Further, this Court has recognized that the legislative bodies of municipalities can operate as administrative tribunals. *Bundo v Walled Lake*, 395 Mich 679, 696-697; 238 NW2d 154 (1976).

The provisions of the home rule cities act that allow the blending of legislative and other functions existed at the time art 3, § 2 of the 1963 Constitution was written. Likewise, Michigan has a longstanding tradition of city manager government. There is no evidence that the framers of the 1963 Constitution intended to call these acts and the structure of numerous municipalities into question by including localities within the scope of art 3, § 2.

B

CIRCUIT COURT JURISDICTION

The Court of Appeals held that the ordinance sought to restrict the jurisdiction of the circuit court in violation of Const 1963, art 6, § 13, which states:

The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law; power to issue, hear and determine prerogative and remedial writs; supervisory and general control over inferior courts and tribunals within their respective jurisdictions in accordance with rules of the supreme court; and jurisdiction of other cases and matters as provided by rules of the supreme court.

The ordinance provision at issue states:

> The Circuit Court shall review the City Commission's
> decision to determine whether the City Commission's deci-
> sion is in violation of the law, has been procured by fraud,
> if an abuse of discretion exists, and whether the decision is
> supported by competent, substantial and material evidence
> on the record as a whole. The Circuit Court's review shall
> be made upon the record made before the City Commis-
> sion. It is the responsibility of the appealing party to
> demonstrate error. [Section 9.709(b).]

We agree that municipalities cannot limit a state
court's jurisdiction. However, we find the Court of
Appeals reliance on art 6, § 13 in isolation to be mis-
placed. Art 6, § 13 applies "except as otherwise pro-
vided by law . . . ." For the reasons set forth below,
we believe that the circuit court's jurisdiction is lim-
ited by Const 1963, art 6, § 28.

Const 1963, art 6, § 28 provides in pertinent part:

> All final decisions, findings, rulings and orders of any
> administrative officer or agency existing under the constitu-
> tion or by law, which are judicial or quasi-judicial and affect
> private rights or licenses, shall be subject to direct review
> by the courts as provided by law. This review shall include,
> as a minimum, the determination whether such final deci-
> sions, findings, rulings and orders are authorized by law;
> and, in cases in which a hearing is required, whether the
> same are supported by competent, material and substantial
> evidence on the whole record.

This provision provides the *minimum* standard of
review for appeals from quasi-judicial final decisions,
findings, rulings, and orders that affect private rights.
*Carleton Sportsman's Club v Exeter Twp*, 217 Mich
App 195; 550 NW2d 867 (1996); *Lorland Civic Ass'n
v DiMatteo*, 10 Mich App 129, 135-136; 157 NW2d 1
(1968).

The process of declaring and abating a public nuisance under the padlock ordinance is quasi-judicial in nature. It is well established that the legislative bodies of cities may act in a quasi-judicial fashion in various circumstances. The Grand Rapids City Charter specifically provides that the city commission may exercise both legislative and administrative powers. Title V, § 51. Further, under the zoning enabling act, MCL 125.585(1); MSA 5.2935(1), the legislative body of a city is specifically authorized to exercise its police powers in a quasi-judicial fashion "as a board of appeals upon questions arising under a zoning ordinance."[17] This Court has also held that a city council may conduct hearings under the Michigan Liquor Control Act to determine whether to recommend renewal of a liquor license. *Bundo, supra.*

There is no express provision in the home rule cities act defining a city commission's powers with respect to nuisance abatement. However, as we have discussed, the constitution and the home rule cities act afford home rule cities broad power to act on behalf of municipal concerns. See Const 1963, art 7, § 22, MCL 117.4j(3); MSA 5.2083(3), and MCL 117.3(j); MSA 5.2073(j). This broad authority to enact ordinances in furtherance of municipal concerns is the foundation for the city commission to act quasi-judicially to enforce those ordinances. Thus, we hold that the legislative body of home rule cities is

---

[17] The statute provides in the alternative that "if the legislative body of a city or village desires, the legislative body may appoint a board of appeals . . . ." MCL 125.585(1); MSA 5.2935(1). However, the statute does not preclude the legislative body of a city or village from reserving to itself the power to act *as a board of appeals* in certain specified matters.

authorized to act in a quasi-judicial manner.[18] Because § 9.709 contains the minimum review standards, we find it valid under Const 1963, art 6, § 28.

IV

DUE PROCESS

Plaintiff argues, finally, that the ordinance is defective because it does not afford adequate procedural due process. The Court of Appeals did not reach this issue.

It is fundamental to both the state and federal constitutions that no person shall be deprived of property without due process of law. "Generally, special or summary proceedings for abatement of nuisances are valid where they afford the essential elements of due process of law, namely, notice and an opportunity to be heard." *People v McKendrick, supra,* p 139, citing *Yates v Milwaukee,* 77 US 497; 19 L Ed 984 (1870). This Court in *Bundo, supra,* addressed the procedural due process required in local legislative body decisions. *Bundo* held that a liquor licensee has a "property right" in a renewal of the license, and, where a local legislative body decides to recommend nonrenewal, the licensee must be afforded rudimentary due process including notice and a hearing. We find that the padlock ordinance provides such notice and opportunity to be heard.

---

[18] The existence of statutory authorization distinguishes the present case from *Vander Toorn v Grand Rapids,* 132 Mich App 590, 596; 348 NW2d 697 (1984), which held that appeals from decisions of a municipal art and museum commission were not limited in the scope of review by Const 1963, art 6, § 28 because the art and museum commission derived its powers solely from city charter and ordinance, neither of which authorized it to act in a quasi-judicial fashion.

The Grand Rapids padlock ordinance provides for notice by certified mail at least seven days before a public evidentiary hearing before the city commission to all persons that the city is aware have an ownership interest in the property. Section 9.704. The ordinance provides the owners an opportunity to present relevant and material evidence, to make factual and legal arguments, and to cross-examine opposing witnesses. *Id.* The owners may choose to be represented by an attorney. *Id.* If the city commission determines by a preponderance of the evidence that a property is a public nuisance, then it may order the nuisance abated. Section 9.705. The abatement process targets the specific apartment where the nuisance occurred in multifamily dwellings rather than padlocking the entire property. *Id.*

Further, we reject plaintiff's argument that the city commission could not render an impartial decision. It is not in the interest of any city to padlock rental properties, nor can the city expect pecuniary gains from enforcement of the ordinance. Finally, decisions of the city commission declaring a property a nuisance and ordering the property padlocked are reviewable by the circuit court, favoring the conclusion that the ordinance does not violate procedural due process. On its face, we hold that the ordinance meets the due process requirements of notice and a hearing.

V

CONCLUSION

We reverse the decision of the Court of Appeals and hold that the ordinance is, on its face, constitutional and a valid exercise of municipal police power.

BRICKLEY, BOYLE, and RILEY, JJ., concurred with
WEAVER, J.

CAVANAGH, J. (*dissenting*). I cannot agree with the
majority's conclusion that the Grand Rapids padlock
ordinance is a valid exercise of municipal authority.
Therefore, I dissent.

I

In a remarkable cloud of dust, this Court has again
ventured into the long-established area of municipal
law and trampled basic principles designed to define
fundamental government functions. Asserting supe-
rior knowledge of the unique harm prostitution and
drugs visit on the City of Grand Rapids, this Court
reaches out, with absolutely no apposite authority,
and reverses a unanimous Court of Appeals decision.[1]
That panel properly recognized that the home rule
act, however liberally interpreted, does not confer
upon a municipality the powers of an equity court or
the power to dictate what jurisdiction a circuit court
may possess. The majority completely fails to com-
prehend the separation of powers determination
made by the Court of Appeals. That Court did *not*
determine that the separation of powers principle
must apply to local governments. It simply stated the
obvious—that the principle does apply at the state
level *and* that our constitution vests judicial power
exclusively in our state courts.

The majority, in treating the due process issue in
four understandably terse paragraphs, labors through
several casuistic steps to save the ordinance. After

---

[1] I find it ironic that all three Court of Appeals panel members happen
to be from Grand Rapids.

listing provisions that allow a property owner to present evidence, to cross-examine and to have an attorney, all very "due" process, the majority then acknowledges that "the [city] commission determines by a preponderance of the evidence that a property is a public nuisance . . . ." *Ante*, p 250. It goes on to blithely assert that, of course, the city council *could* render an impartial decision because "[i]t is not in the interest of any city to padlock rental properties . . . ." *Id.*, p 272. This is a strange statement, indeed, after having labored so mightily to establish how uniquely important it is to the City of Grand Rapids to be able to stamp out this vice without having to resort to state nuisance law.

After today's ruling by this Court, I can't imagine why cities throughout Michigan would not jump at the chance to have *all* ordinance violations "tried" by their city council, which enacts the ordinance, which has its building or police or fire departments enforce and prosecute under the ordinance, and, to complete the circle, which then determines if there has been a violation. Perhaps, this Court, in an effort to compensate for its decision in *Paragon v City of Novi*, 452 Mich 568; 550 NW2d 772 (1996), which gave zoning boards of appeal superior zoning authority over their creating city councils, now wishes to bless city councils across this state with unprecedented authority.

II

Although as a prudential matter we generally do not decide cases on grounds not argued by the parties, we have the inherent authority to do so. Because the record presented in this case is fully adequate for the ruling I contemplate—specifically, because it con-

tains all possible justifications defendant could offer in support of its ordinance—I deem it appropriate to decide this case on a ground not argued by the parties: the doctrine of implied preemption.

The Michigan nuisance abatement statute, MCL 600.3801 *et seq.*; MSA 27A.3801 *et seq.*, addresses the problems of illegal drugs and prostitution, and, in conjunction with MCR 3.601, sets forth the procedure applicable statewide for determination and abatement of a public nuisance. Accordingly, I would hold that the Grand Rapids padlock ordinance is impliedly preempted and, therefore, invalid.

The Michigan nuisance abatement statute provides as follows:

> Any building . . . or place used for the purpose of lewdness, assignation or prostitution . . . or used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance . . . is declared a nuisance . . . . Any person or his or her servant, agent, or employee who owns, leases, conducts, or maintains any building, vehicle, or place used for any of the purposes or acts set forth in this section is guilty of a nuisance. [MCL 600.3801; MSA 27A.3801.]

Section 3805 authorizes the Attorney General, the prosecuting attorney of a county, or any citizen of the county to "maintain an action for *equitable relief* . . . to abate said nuisance and to perpetually enjoin [a use] for any of the purposes or by any of the persons set forth in section 3801, or for any of the acts enumerated in said section." (Emphasis added.) Section 3815 sets forth the admissible evidence and standard of proof relevant to the determination whether a nuisance exists. Subsection 3825(1) provides that once the existence of a nuisance has been

established "an order of abatement shall be entered as a part of the judgment . . . ." The order is to direct the removal from a building or place of all furniture, fixtures, and contents and the sale of these items. Furthermore, and relevant to the case at bar, the order is to direct the "effectual closing of the building or place against its use for any purpose, and so keeping it closed for a period of 1 year, unless sooner released as in this chapter provided." And finally, subsection 3840(1) provides that if the owner of such building or place "pays all costs of the proceeding, and files a bond with sureties approved by the circuit judge, in the penal sum of not less than $1,000.00 nor more than $50,000.00, conditioned that he will immediately abate the nuisance and prevent the same from being established or kept therein within a period of 1 year from the date of the judgment, the *court* may order such premises to be delivered to the owner and if the bond is given and costs therein paid before order of abatement, the action shall be thereby abated as to that building only." (Emphasis added.)

The factors to be considered in a preemption analysis are as follows:

A municipality is precluded from enacting an ordinance if 1) the ordinance is in direct conflict with the state statutory scheme, or 2) if the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation.

\*          \*          \*

In making the determination that the state has thus pre-empted the field of regulation which the city seeks to enter in this case, we look to certain guidelines.

First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted.

Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.

Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.

Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

As to this last point, examination of relevant Michigan cases indicates that where the nature of the regulated subject matter calls for regulation adapted to local conditions, and the local regulation does not interfere with the state regulatory scheme, supplementary local regulation has generally been upheld.

However, where the Court has found that the nature of the subject matter regulated called for a uniform state regulatory scheme, supplementary local regulation has been held pre-empted. [*People v Llewellyn*, 401 Mich 314, 322-325; 257 NW2d 902 (1977) (citations omitted).]

In my opinion, the third and fourth factors weigh heavily in favor of a conclusion that the Grand Rapids ordinance is preempted by the nuisance abatement statute, which, along with MCR 3.601,[2] specifies the

_____

[2] In relevant part, the court rule provides as follows:

(A) Procedure to Abate Public Nuisance. Actions to abate public nuisances are governed by the general rules of procedure and evidence applicable to nonjury actions, except as provided by the statutes covering public nuisances and by this rule.

procedure for obtaining a judicial declaration that a certain property is a public nuisance because it is a site of illegal drug activities or is used for purposes of prostitution, and for abatement of such nuisances.

The consideration of uniformity is of paramount importance, and this consideration is implicated by the fact that violations of the Grand Rapids ordinance, like violations of the state nuisance abatement statute, can only be determined, and penalties enforced, by a court. Grand Rapids City Charter, title V, § 52(b).[3] Since the City of Grand Rapids does not have a municipal court, the only available forum is a state court, and the state has an obvious interest in having uniform rules of procedure and evidentiary standards in its courts.

Furthermore, all the concerns expressed by the City of Grand Rapids in enacting its ordinance are addressed and provided for in the state nuisance abatement statute. And there is no reason for us to assume that the blight visited on Grand Rapids by the criminal activities at issue here is more consequential than that suffered by any other affected community in this state. In sum, the pervasiveness of the state statutory scheme and the very significant interest in statewide uniformity weigh heavily in favor of a finding of implied preemption in this case. In fact, to the extent

---

[3] The majority mischaracterizes the reason for the citation to § 52(B) of the Grand Rapids City Charter. The state's interest in uniformity in its courts exists independently of § 52(B), or any other city charter or municipal ordinance for that matter. I cite § 52(B) only as the proof that nuisance abatement proceedings will be conducted in state courts.

Furthermore, the majority's reference to the home rule cities act is irrelevant in this context. The Grand Rapids City Charter was adopted pursuant to Const 1963, art 7, § 22, not the act. Therefore, because there is no conflict between the city charter and the act, the city charter is the only provision relevant to the actual point at issue here.

that the Grand Rapids ordinance differs from the nuisance abatement statute, I would hold that it is in direct conflict with the statute. It is not plausible to argue that the Grand Rapids ordinance merely supplements the state statute.

III

Defendant claims that the Court of Appeals erred by characterizing the Grand Rapids City Commission as merely a legislative body, arguing instead that it is both legislative and administrative, and that, under the administrative rubric, it properly may exercise quasi-judicial power to declare the existence of a nuisance. It is true that we previously have recognized the dual nature—both legislative and administrative— of the Grand Rapids City Commission. See *Babcock v Grand Rapids*, 308 Mich 412, 413; 14 NW2d 48 (1944). However, because this case does not require it, I do not essay an exhaustive discussion of the quasi-judicial powers available to administrative bodies. And neither do I address the differences—significant or otherwise—between administrative bodies such as municipal commissions and state administrative agencies.[4] It suffices to note that even if the social ills the City of Grand Rapids sought to interdict were matters of uniquely local concern, and therefore within the city's administrative purview, the attempt to confer on itself the power to determine the existence of a

---

[4] I would, however, emphasize that there are differences, and that there is no basis for treating the Grand Rapids City Commission as if it were a state administrative agency, as the majority impliedly does in upholding the ordinance's attempt to confer appellate jurisdiction on the circuit court. I would also note that I am unaware of any source of authority empowering a municipality to in any way address the jurisdictional or substantive aspects of the circuit court's power.

public nuisance would still be an improper encroach-
ment on a purely judicial function, as clearly contem-
plated in and defined by statute.

Writing for a unanimous Court in *Everett v City of
Marquette*, 53 Mich 450, 452; 19 NW 140 (1884), Chief
Justice COOLEY enunciated a principle and a rule of
law that continue in full effect in our jurisprudence:
"Maintaining a nuisance is a public offense; and the
fact, as in other cases of alleged criminality, is to be
tried on proper accusation and *in the regular courts*."
(Emphasis added.)

IV

My resolution of this case makes it unnecessary to
further address plaintiff's due process challenge to
Ordinance No. 93-39, or plaintiff's claim that the
abatement remedy provided for in the ordinance is de
facto a forfeiture. I also decline to address plaintiff's
arguments relative to the ordinance's attempt to
define the scope and standard of circuit court juris-
diction, except to note again that I am unaware of
any source of authority, certainly none is cited by the
majority, empowering a municipality to in any way
address the jurisdictional or substantive aspects of
the circuit court's power.

V

For the foregoing reasons, I would affirm the judg-
ment of the Court of Appeals, and would remand this
matter to the circuit court for entry of a permanent
injunction against the enforcement of Grand Rapids
Ordinance No. 93-39.

MALLETT, C.J. (*dissenting*). Although I agree with
Justice CAVANAGH that the decision of the Court of

Appeals should be affirmed, I cannot agree with his preemption analysis for the reasons stated in part II(C) of the majority opinion. I also agree with the majority's assertion that the separation of powers doctrine, contained in Const 1963, art 3, § 2, does not apply to local governments.

I believe that the decision of the Court of Appeals should be affirmed, however, because § 9.704(3) of the Grand Rapids padlock ordinance vests the authority to adjudicate violations of the ordinance in the city commission, not the courts. It states:

> The City Commission, sitting as an administrative body . . . and acting in a quasi-judicial capacity, shall make a determination as to whether a public nuisance exists under the standards established by this Chapter.

This portion of the padlock ordinance attempts to give the city commission authority beyond what is permitted by Const 1963, art 6, § 1, the home rule cities act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*; or the Due Process Clauses, Const 1963, art 1, § 17; US Const, Am XIV.

An axiom of municipal law is that municipalities are agents of the state, created for the administration of local government. *Streat v Vermilya*, 268 Mich 1, 6; 255 NW 604 (1934). Municipalities have no inherent power; rather, they may only exercise powers that the state confers upon them. *Bivens v Grand Rapids*, 443 Mich 391, 397; 505 NW2d 239 (1993). While the home rule act grants broad authority to municipalities, this authority is not unlimited.

Art 6, § 1 limits the exercise of judicial power to the courts. It states:

> The judicial power of the state is vested *exclusively* in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house. [Emphasis added.]

Thus, because cities only have the powers that the state grants them, and because the state constitution vests the judicial power *exclusively* in the courts, municipalities may not exercise judicial power. Professor LeDuc has discussed this concept in relation to legislatively created administrative agencies:

> [J]ust as the legislature cannot give away its authority to legislate, it cannot convey true judicial power on administrative agencies. Thus, the legislature can confer only those powers which are administrative in nature and cannot give the powers of a true court to an agency. In addition, an agency cannot rely upon any concept of inherent authority to give itself judicial power. [LeDuc, Michigan Administrative Law, § 2.22, p 26.]

In this case, the City of Grand Rapids has attempted to characterize § 9.704(3) as an exercise of "quasi-judicial" powers. It is true that cities, like other administrative agencies, very often exercise quasi-judicial powers. See, e.g., *Prawdzik v Grand Rapids*, 313 Mich 376, 390-391; 21 NW2d 168 (1946) (concerning the revocation of a restaurant's license); *In re Payne*, 444 Mich 679, 708, 720; 514 NW2d 121 (1994) (concerning the termination of a civil service employee); zoning enabling act, MCL 125.585; MSA 5.2935 (authorizing a city commission to sit as a zoning board of appeals). It is also true that municipalities may abate certain kinds of nuisances administra-

tively, without prior approval of a court. See *People v McKendrick*, 188 Mich App 128, 137-140; 468 NW2d 903 (1991) (concerning the cutting of weeds).

Because of the nature of the interest at stake in this case, however, the padlock ordinance cannot properly be characterized as conferring only "quasi-judicial" powers on the city commission. This is not a case about cutting weeds, revoking a business' license, or rezoning a parcel of land. Rather, this ordinance has the potential to deprive individuals of access to their homes for up to a year. In this way, the ordinance affects one of the most fundamental rights in Anglo-American jurisprudence—the right to live in one's home. If an individual is going to be deprived of this right, traditional notions of due process require a proper adjudication before an impartial tribunal that is designed to protect the rights of the individual. That is, it requires an exercise of judicial power. A city commission is simply not equipped to serve as a substitute for a court.

I wish to make clear that I agree with the majority that cities have broad authority under the home rule cities act and that nuisance abatement is a valid goal of municipal government. In fact, I see no reason why a municipality cannot establish a padlock ordinance that is similar to the state nuisance abatement statute. MCL 600.3801; MSA 27A.3801. What a municipality cannot do, however, is usurp the role of the judiciary in adjudicating violations of these ordinances.

Clearly, the City of Grand Rapids, like many other Michigan cities, faces serious problems because of drugs and prostitution, and, as Justice Stevens stated in *Young v American Mini Theatres, Inc*, 427 US 50, 71; 96 S Ct 2440; 49 L Ed 2d 310 (1976), cities "must

be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." In our rush to combat the serious problems caused by drugs and prostitution, however, we must be careful not to trample on the fabric of the Michigan or United States Constitution. I fear that the Grands Rapids padlock ordinance does just that.