*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COEUS, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

CITY OF WALLED LAKE, LINDA S. ACKLEY,
L. DENNIS WHITT, CHELSEA PESTA, and
JENNIFER A. STUART,

        Defendants-Appellees,

and

JOHN AND JANE DOES 1 THROUGH 20,
FRANK MARRA, and MATTHEW CECCHETTI,

        Defendants,

and

CUSTOM BUILT PROPERTIES, LLC, doing
business as GREEN HOUSE OF WALLED LAKE,
and JERRY MILLEN,

        Defendants/Counterplaintiffs.

UNPUBLISHED
January 20, 2022

No. 353844
Oakland Circuit Court
LC No. 2018-170030-CZ

Before: GADOLA, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Plaintiff, COEUS, LLC, appeals as of right the trial court's stipulated order of dismissal.[1] On appeal, plaintiff challenges the trial court's earlier opinion and order granting summary disposition in favor of defendants city of Walled Lake, Mayor Linda S. Ackley, City Manager L. Dennis Whitt, City Development Manager Chelsea Pesta, and City Clerk Jennifer A. Stuart (collectively, "the city defendants"). On appeal, plaintiff argues that the city defendants are not entitled to governmental immunity and that its claims alleging a violation of due process and promissory estoppel were legally sufficient. We affirm.

This case arises from the city of Walled Lake's implementation, under the authority of the Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.27101 *et seq*., of its medical marijuana facilities licensing ordinance and plaintiff's subsequent application for a license to operate a provisioning center. The ordinance specifies that there are to be three licenses for provisioning centers, with two located in the C-2 zoning district and one located in the C-3 zoning district. Walled Lake Ordinance C-334-17, § 6b, enacting § 21.49(b) of the Zoning Ordinance. Subsequently, the city passed Resolution 2018-10, which established administrative rules for processing MMFLA permit applications.

After submitting applications to the city, plaintiff attempted numerous times to obtain status updates. In response to plaintiff's repeated phone calls, the city informed plaintiff that no action had been taken on any of the applications, no permits had been issued, and no meetings had been held addressing any of the applications. Plaintiff alleged that contrary to the city's claims that no MMFLA licenses had been issued, it was evident that the city had issued a license to defendant Green House of Walled Lake. Ultimately, plaintiff was advised that its request for the C-3 license was denied.

In its second amended complaint, plaintiff alleged the following counts against the city defendants: fraudulent misrepresentation (Count II); silent fraud (Count III); negligent misrepresentation (Count IV); unjust enrichment (against the city of Walled Lake only) (Count V); breach of an implied contract (Count VI); promissory estoppel (Count VII); violation of due process and equal protection (Count VIII); civil conspiracy (Count IX); injunctive relief (Count X); and gross negligence (Count XI).

The city defendants thereafter moved for summary disposition under MCR 2.116(C)(7), arguing that they were entitled to governmental immunity with respect to the alleged torts, and under MCR 2.116(C)(8) on plaintiff's due-process and promissory-estoppel claims. In a thorough opinion and order, the trial court granted the motion and dismissed all claims against the city defendants.

## I. GOVERNMENTAL IMMUNITY

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008), as well as issues involving

---

[1] That order dismissed with prejudice plaintiff's claims against defendants Custom Built Properties, LLC, Jerry Millen, Frank Marra, and Matthew Cecchetti. The order also dismissed the counterclaims brought by Custom Built and Millen against plaintiff.

questions of law, such as the construction and interpretation of a city charter or ordinance. *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998); *Ferguson v City of Lincoln Park*, 264 Mich App 93, 95; 694 NW2d 61 (2004).

A party is entitled to summary disposition under MCR 2.116(C)(7) if, among other things, the plaintiff's claims are "barred because of immunity granted by law." When considering a motion brought under this subrule, the court considers all the affidavits, depositions, admissions, or other documentary evidence submitted by the parties. MCR 2.116(G)(5). "The contents of the complaint are accepted as true unless contradicted by the evidence provided." *Odom*, 482 Mich at 466 (quotation marks and citation omitted).

## A. CITY OF WALLED LAKE

The governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, provides that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."[2] MCL 691.1407(1); see also *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 326-327; 869 NW2d 635 (2015). While there are six statutory exceptions to this broad grant of immunity, plaintiff did not allege that any applied.[3] Thus, as the trial court noted, the only question is whether the city was engaged in a governmental function.

The GTLA defines "governmental function" as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). Conversely, when "a governmental agency engages in an activity which is not expressly or impliedly mandated or authorized by constitution, statute, or other law (*i.e.*, an *ultra vires* activity), it is not engaging in the exercise or discharge of a governmental function" and "is therefore liable for any injuries or damages incurred as a result of its tortious conduct." *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 620; 363 NW2d 641 (1984). However, when determining whether an act is a "governmental function" or merely an ultra vires act, courts are to " 'look to the general activity involved rather than the specific conduct engaged in when the alleged injury occurred.' " *Genesee Co Drain Comm'r*, 309 Mich App at 327, quoting *Ward v Mich State Univ (On Remand)*, 287 Mich App 76, 84; 782 NW2d 514 (2010).

Although plaintiff alleges that the city engaged in fraudulent and corrupt acts, its focus is too narrow. In this instance, the general activity in which the city had been engaged was the implementation and adoption of its medical marijuana facilities licensing ordinance and the

---

[2] There is no dispute that the city of Walled Lake is a "governmental agency" as defined by the GTLA. See MCL 691.1401(a), (d), and (e).

[3] "The six statutory exceptions are: the highway exception, MCL 619.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)." *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84 n 10; 746 NW2d 847 (2008).

processing of applications for a license.  The implementation of the ordinance was expressly authorized by the MMFLA, and the processing of applications for licenses was authorized by the city's ordinance.  Therefore, the city was engaged in a governmental function, and accordingly, it is immune from tort liability.  Thus, the trial court did not err by granting summary disposition to the city on this ground.[4]

### B.  CITY DEVELOPMENT MANAGER PESTA AND CITY CLERK STUART

Plaintiff next argues that the trial court erred by granting summary disposition in favor of City Development Manager Pesta and City Clerk Stuart.

The GTLA also grants immunity to officers and governmental agency employees for negligent and intentional conduct if other conditions are met.

Regarding negligent torts, MCL 691.1407(2) provides, in pertinent part:

[E]ach officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all the following are met:

      (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

      (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

      (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

In response to the city defendants' motion for summary disposition, plaintiff only contested the gross-negligence component by stating, "[T]he sole issue before this Court is whether Plaintiff has properly alleged the elements of gross negligence."  Thus, our review is whether the conduct of Pesta and Stuart amounts to gross negligence.

---

[4] To the extent that plaintiff argues that the city could be liable under a theory of gross negligence, the gross-negligence exception to governmental immunity contained in MCL 691.1407(2) only applies to *individuals*; it does not apply to the *governmental agency* itself.  *Gracey v Wayne Co Clerk*, 213 Mich App 412, 420; 540 NW2d 710 (1995), abrogated on other grounds in *American Transmissions, Inc v Attorney General*, 454 Mich 135; 560 NW2d 50 (1997); see also *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004).

Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). The alleged failure of Pesta and Stuart to follow the procedures in the city's ordinance and resolution do not amount to gross negligence. Notably, on appeal and without providing any citations to the lower court record, plaintiff merely asserts that it had "specifically plead[ed] that the actions of those individuals [Pesta and Stuart] constituted gross negligence, citing specific examples and drawing upon the deposition of Pesta." This type of cursory argument constitutes an abandonment of the issue on appeal. See *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Even considering the cursory argument, however, it appears that plaintiff is referring to its response to the city defendants' motion for summary disposition because it is in that filing that plaintiff cites and provides the deposition of Pesta. But plaintiff's allegations are limited to Pesta failing to advise plaintiff of the results of the preliminary review, which plaintiff asserts was required under the city's Resolution 2018-10. Pesta testified that she thought the resolution only required her to notify applicants if the preliminary review revealed that their application was somehow incomplete.[5] Assuming Pesta had an obligation under the resolution to conduct a preliminary review and to communicate the results to plaintiff, yet failed to do so because she was mistaken, such conduct is not "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). At best, such conduct amounts to ordinary negligence. Therefore, the trial court properly granted summary disposition in favor of Pesta and Stuart on all of plaintiff's negligence claims.

While MCL 691.1407(2) governs negligence claims, intentional-tort claims are governed by MCL 691.1407(3), which simply provides that the law regarding intentional torts is as it existed

---

[5] The pertinent section of Resolution 2018-10 states:

> Upon receipt of an Application for site plan and/or operational approval of a Marijuana Facility and payment of all required fees, the City Clerk shall conduct a preliminary review of the Application for purposes of determining completeness and preliminary eligibility of the proposed or existing facility at the proposed or existing location. The City Clerk shall notify the applicant of the results of the preliminary review, including deficiencies rendering the application incomplete, and afford the applicant an opportunity to withdraw the application and receive a refund of the application fee and consultant review fee if the preliminary review reveals the proposed facility is not eligible for further review. If an application is incomplete, the applicant may withdraw the application and receive a refund of refundable fees, or cure any deficiencies rendering the application incomplete. Preliminary administrative review fees are non-refundable. Unless the Applicant withdraws the application, the Clerk shall forward a complete application for an eligible facility and all supporting materials for final review, recommendation and/or action by City staff, administration and/or consultants as may be required by applicable City Code or ordinance. Unless otherwise provided by these rules or applicable code or ordinances, complete applications for an eligible facility will be processed in the order received as determined by the date the application is completed. [Walled Lake Resolution 2018-10, § 4.]

before July 7, 1986. *Odom*, 482 Mich at 470-471. Thus, with respect to intentional torts, a governmental employee is immune from liability if (1) she was acting within the course of her employment and was acting, or reasonably believed that she was acting, within the scope of her authority; (2) the acts were not undertaken with malice; and (3) the acts were discretionary, as opposed to being ministerial. *Id*. at 480.

It is important to recognize which intentional torts are at issue here. The only intentional torts alleged against the city defendants (and, hence, Pesta and Stuart) are plaintiff's claims of fraudulent representation and silent fraud. We agree with the trial court that plaintiff did not allege in its second amended complaint any facts that would lead to the conclusion that either Pesta or Stuart had acted outside the scope of their authority. Indeed, processing permit applications and communicating with the applicants is within both of their job responsibilities, and given the need to review applications for completeness and sufficiency, the trial court was correct in concluding the process was not ministerial in nature.

That leaves open the question whether the trial court erred when it stated that plaintiff did not plead any facts supporting the conclusion that either Pesta or Stuart acted with malice. A lack of good faith has been described as "malicious intent, capricious action or corrupt conduct" or "willful and corrupt misconduct." *Id*. at 474 (quotation marks and citations omitted). For the reasons articulated in section I.B of this opinion, we again conclude that plaintiff has not adequately presented the argument as to what allegations exist as to Pesta and Stuart on the existence of malice. We have canvassed both plaintiff's principal and reply briefs, and have found no specific citation to the record—or citation to any specific factual allegations—that are meant to show that either defendant acted with malice. Both briefs do contain assertions that these defendants "acted fraudulently and corruptly," and that they (and others) engaged "in corrupt and illegal practices," but those were in reference to the argument that they (and the city) were not engaged in a governmental function, because they were acting ultra vires. But even if those allegations were directed toward whether there was malice as to these two defendants under *Odom*, these allegations are conclusory and come nowhere close to what is required for a properly developed argument. Hence, we conclude that plaintiff has effectively abandoned the argument that there are sufficient factual allegations of malice against defendants Pesta and Stuart to withstand summary disposition. *Peterson Novelties, Inc*, 259 Mich App at 14.[6]

## C. CITY MANAGER WHITT

---

[6] In fact, there is not a single citation to any paragraphs from the second amended complaint (nor the original or first amended complaints) in either brief, and the exhibits cited in the briefs that are written by defendants Petra or Stuart are letters responding on behalf of the city to freedom of information act requests submitted by plaintiff's counsel (by defendant Petra) and a letter to the state licensing agency regarding the status of a certificate of occupancy and pre-approval of a license for Custom Built Properties (by defendant Stuart). Even if the Petra letters reflect a denial of information that existed, without more expansive argument, it is difficult to discern how this reflects malice on the part of Petra. And, confirmation of certain facts to an agency by Stuart could go towards allegations against the city or other decision-maker, but says nothing about decisions made by Stuart.

Plaintiff also argues that the trial court erred by ruling that City Manager Whitt was absolutely immune from liability. We note that a panel of this Court recently rejected this same argument as to Whitt in a case involving these same parties. See *Jones v Walled Lake*, unpublished opinion per curiam of the Court of Appeals, dated June 17, 2021 (Dkt No. 350997). We agree with the rationale and conclusions reached in that opinion, but set forth our reasoning for the sake of completeness and further appellate review.

The GTLA provides certain high-ranking governmental officials with absolute immunity from tort liability. MCL 691.1407(5) states:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Thus, "[t]o qualify for absolute immunity from tort liability[,] an individual governmental employee must prove his or her entitlement to immunity by establishing, consistently with the statute's plain language, (1) that he or she is a judge, legislator, or the elective or highest appointive executive official of a level of government and (2) that he or she acted within the scope of his or her judicial, legislative, or executive authority." *Petipren v Jaskowski*, 494 Mich 190, 204; 833 NW2d 247 (2013). Because there is no dispute that Whitt was not a judge or legislator, the first question that must be answered is whether he was "the elective or highest appointive executive official" for the city of Walled Lake.

Plaintiff asserts that Whitt is an administrator who lacks any executive function and has no legal role.[7] The duties of the city manager are described by ordinance as follows:

> (1) Be responsible to the council for the efficient administration of all administrative departments of the city government.

> (2) *See that all laws and ordinances are enforced*.

> (3) Appoint, with the consent of the council, the heads of the several city departments whose appointments are not otherwise specified in the city Charter or ordinance, and to discharge the department heads without the consent of the council, and to direct and supervise the department heads.

---

[7] Plaintiff raises this argument for the first time on appeal. Plaintiff takes exception to the trial court noting that plaintiff had not "dispute[d]" that Whitt was the highest appointive executive official in the city, but this characterization is accurate because plaintiff never provided any contrary argument in its response to the city defendants' motion for summary disposition. Plaintiff mischaracterizes the trial court's opinion as saying that plaintiff had *conceded* this point, when the court merely said that plaintiff did not *dispute* it.

(4) Give to the proper department or officials ample notice of the expiration or termination of any franchises, contracts or agreements.

(5) See that all terms and conditions imposed in favor of the city or its inhabitants in any public utility franchise, or in any contract, are faithfully kept and performed.

(6) Recommend an annual budget to the council and to administer the budget as finally adopted under policies formulated by the council, and to keep the council fully advised at all times as to the financial condition and needs of the city.

(7) Recommend to the council for adoption such measures as may be deemed necessary or expedient, and to attend council meetings with the right to take part in discussions but not to vote.

(8) Exercise and perform all administrative functions of the city that are not imposed by the city Charter or ordinance upon some other official.

(9) Perform such other duties as may be prescribed by the city Charter or as may be required by ordinance or by direction of the council. [Walled Lake Ordinances, § 2-43 (emphasis added).]

The fact that this ordinance omits the use of the term "executive" and uses the term "administrative" is not dispositive. Indeed, the type of administration Whitt performs clearly is "executive administration." See *Black's Law Dictionary* (11th ed) (defining "executive administration" as "[c]ollectively, high public officials who administer chief departments of the government"). Further, "executive branch" is defined as "[t]he division of government charged with *administering* and *carrying out the law*." *Id*. (emphasis added). While Whitt is the chief administrative officer of the city, his duties also include "[s]ee[ing] that all laws and ordinances are enforced." Walled Lake Ordinances, § 2-43(2). Also, "[a]n executive should have broad-based jurisdiction or extensive authority similar to that of a judge or a legislator." *Chivas v Koehler*, 182 Mich App 467, 471; 453 NW2d 264 (1990). Whitt's authority as city manager is very extensive, as evidenced by the lengthy duties delineated in the ordinance. See Walled Lake Ordinances, § 2-43. Thus, it is evident that Whitt possesses executive authority, as that term is commonly understood.[8] See also *Rental Prop Owners Ass'n of Kent Co v City of Grand Rapids*, 455 Mich 246, 267; 566 NW2d 514 (1997) (recognizing a city manager as an "executive").

Plaintiff's argument that the Mayor Pro-Tem is the highest appointive person in the city government is not supported by the plain reading of the relevant portions of the city charter, which provide:

---

[8] The Michigan Supreme Court also has recognized that a city manager is an "executive," stating, "Under the city manager form of government, popular among smaller cities, the executive, the city manager, serves at the will of the legislature, the city commission." *Rental Prop Owners Ass'n of Kent Co v City of Grand Rapids*, 455 Mich 246, 267; 566 NW2d 514 (1997).

-8-

At each municipal election, the new Councilman from among those incumbents who ran for re-election at the most recent election, *who has received the highest number of votes* in that election, and who shall have served a tenure of two (2) years shall be Mayor Pro-tem, unless such Councilman shall in writing notify the clerk of their declination to so serve before such *appointment* becomes effective, in which event, the Councilman who has received the second highest number of votes in that election shall become Mayor Pro-tem, provided that person has served as a Councilman for at least two (2) years. [Walled Lake Charter, § 4.4.]

Although the charter uses the word "appointment" once in describing the position, there is nothing about the position that is appointive. Who becomes mayor pro-tem is not decided by any governmental official or body. Instead, the mayor pro-tem is determined by which incumbent council member received the *highest number of votes from the general election*. There is nothing appointive about such a scheme. As such, regardless of how the charter may view this as an "appointive" position, it is not one as contemplated by the GTLA.

Therefore, as the highest appointive executive official in the city, Whitt is absolutely immune from tort liability under the GTLA with respect to actions performed "within the scope of his . . . executive authority," MCL 691.1407(5), and the trial court did not err by coming to the same conclusion.

## II. FAILURE TO STATE A CAUSE OF ACTION

Plaintiff also argues that the trial court erred by granting summary disposition in favor of the city defendants on plaintiff's claims of violation of the constitutional right to due process of law and on its tort claim of promissory estoppel.

"A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone. The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted. The motion should be granted if no factual development could possibly justify recovery." *Beaudrie v Henderson*, 465 Mich 124, 129-130; 631 NW2d 308 (2001).

## A. DUE-PROCESS CLAIM

"The United States and Michigan constitutions preclude the government from depriving a person of life, liberty, or property without due process of law." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 605-606; 683 NW2d 759 (2004), citing US Const, Am XIV; Const 1963, art 1, § 17. " 'A procedural[9] due process analysis requires a dual inquiry:

---

[9] In its second amended complaint, plaintiff labeled its due-process claim a "substantive" due-process claim. However, courts are not bound by the labels parties use in their pleadings, *Buhalis v Trinity Continuing Care Servs*, 292 Mich App 685, 691-692; 822 NW2d 254 (2012), and the substance of plaintiff's count demonstrates that it was making a procedural due-process claim. Moreover, plaintiff never disputed that it needed to have a property interest for its due-process claim to be viable.

(1) whether a liberty or property interest exists which the state has interfered with, and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient.' " *Hinky Dinky*, 261 Mich App at 606 (citation omitted). Due process is only implicated "if there is a liberty or property interest at stake." *Galien Twp Sch Dist v Dep't of Ed* (*On Remand*), 310 Mich App 238, 241; 871 NW2d 382 (2015).

The city defendants argued, and the trial court agreed, that plaintiff's claim failed for the simple reason that plaintiff had no viable property interest. On appeal, plaintiff argues that a license under the MMFLA confers on the recipient a property right. While this principle likely is applicable to MMFLA licenses, see *Bundo v City of Walled Lake*, 395 Mich 679, 695; 238 NW2d 154 (1976) (stating that a liquor license holder has a property interest in the license), it is not dispositive because plaintiff ignores the fact that *it never possessed a license*. It is well established that the law treats those who possess a license and are attempting to renew it differently from those who do not possess a license and are first-time applicants. See *Wong v City of Riverview*, 126 Mich App 589, 593; 337 NW2d 589 (1983) ("In fact, a first-time applicant is not even entitled to minimal due process."); *Shamie v City of Pontiac*, 620 F2d 118, 120 (CA 6, 1980) (stating that first-time license applicants do not enjoy procedural due-process rights under Michigan law), citing *Morse v Liquor Control Comm*, 319 Mich 52, 66; 29 NW2d 316 (1967), and *Bisco's, Inc v Liquor Control Comm*, 395 Mich 706, 716; 238 NW2d 166 (1976). Therefore, it is clear that plaintiff did not have a recognized property interest because it never had a license to begin with. Furthermore, because it was undisputed that the city had more applicants than licenses available, there necessarily was discretion involved in selecting who would receive the licenses. "A party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *RSWW, Inc v City of Keego Harbor*, 397 F3d 427, 435 (CA 6, 2005) (quotation marks, citation, and brackets omitted).

The trial court properly dismissed plaintiff's violation of due process of law claim.[10]

## B. PROMISSORY-ESTOPPEL CLAIM

In *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686-687; 599 NW2d 546 (1999), this Court observed:

> The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on part of the promisee, and (3) that in fact produced reliance or

---

[10] Plaintiff also asserts that its due-process claim should have survived summary disposition because it was seeking injunctive relief. But plaintiff's Count VIII, alleging a violation of due process, contains no allegations or requests for injunctive relief. Moreover, even if plaintiff's request for injunctive relief survived the city defendants' motion for summary disposition, count X ultimately was dismissed via the stipulated order to dismiss. Because plaintiff agreed to dismiss the "claim" for injunctive relief, it cannot now assert on appeal that the dismissal was erroneous. See *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003); *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 455 n 1; 733 NW2d 766 (2006).

forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided.

In its second amended complaint, plaintiff alleged that the "promise" that forms the basis for its claim of promissory estoppel is found in the city's ordinance and administrative rules, providing that the "orderly, efficient, fair and coordinated" processing of applications would occur. At the outset, it should be clear that the only city defendant that possibly could be subject to this claim would be the city of Walled Lake. The alleged promise is contained in enactments of the city; it is not alleged that any individual city defendant made these promises. Thus, we can affirm the dismissal of this claim against the other city defendants for this reason alone. See *Washburn v Michailoff*, 240 Mich App 669, 678 n 6; 613 NW2d 405 (2000) (stating that this Court can affirm a trial court's decision when it reaches the right result albeit for different reasons).

The city defendants argued in the trial court that the promissory-estoppel count should be dismissed because statutes and ordinances do not create contractual rights. While this is a recognized principle of law, see *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 661; 698 NW2d 350 (2005), it is not necessarily controlling because promissory estoppel does not require contractual rights. Indeed, "promissory estoppel is an exception to general contract principles in that it permits enforcement of a promise that may have no consideration." *State Bank of Standish v Curry*, 442 Mich 76, 96; 500 NW2d 104 (1993) (RILEY, J., dissenting). Because of this exception, the promise must be definite and clear. *Id*., citing *McMath v Ford Motor Co*, 77 Mich App 721, 726; 259 NW2d 140 (1977); see also *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 442; 505 NW2d 275 (1993) ("The sine qua non of promissory estoppel is a promise that is definite and clear.").

The specific "promise" plaintiff has identified is located in the preamble section of the city's Resolution 2018-10, which provides:

> WHEREAS, in order to facilitate orderly, efficient, fair and coordinated processing of the various state and local applications and approvals in a manner consistent with the requirements of the Act, the Rules and the City's codes and ordinances, City Council has determined that it is necessary and expedient to adopt the following administrative rules concerning processing of City applications for local approval of Marijuana Facilities. [Walled Lake Resolution 2018-10, p 2.]

The identified "promise" above is not definite and clear. It promises nothing. Instead, this portion of the preamble merely states that its accompanying rules were enacted to facilitate the orderly, efficient, fair, and coordinated processing of applications. That is not the same as a definite and clear promise to actually have orderly, efficient, and fair processes. While those concepts are part of the aspirational goals of the resolution, it is not a promise. Indeed, the passage simply refers the reader to the remainder of the resolution to determine what the specific administrative rules are "concerning [the] processing of City applications for local approval of Marijuana Facilities." Moreover, preambles are not authoritative. *King v Ford Motor Co*, 257 Mich App 303, 311-312; 668 NW2d 357 (2003); see also *Yazoo & MVR Co v Thomas*, 132 US 174, 188; 10 S Ct 68; 33 L Ed 302 (1889) (stating that a "preamble is no part of the act, and cannot enlarge or confer powers, nor control the words of the act, unless they are doubtful or ambiguous"); *Nat'l Pride at Work, Inc v Governor*, 481 Mich 56, 79 n 20; 748 NW2d 524 (2008).

Consequently, because the promise on which plaintiff relies for its claim of promissory estoppel is not clear and definite, the claim fails as a matter of law. We affirm the trial court's grant of summary disposition in favor of the city defendants because the trial court reached the correct result, albeit for different reasons. See *Washburn*, 240 Mich App at 678 n 6.

Affirmed.


/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Christopher M. Murray